LOTTINGER, Judge.
This is a suit by Alvin P. Knight, against William ,M. Davenport for rescission of the sale of a cow, the return of the purchase price and expenses for keeping the cow, plus loss of profit. From judgment below in favor of petitioner, the defendant has appealed.
The facts show that on September 14, 1951, the defendant sold the petitioner five milch cows for the purpose of dairying. The price was $310 per cow. One cow was not satisfactory to the petitioner, and the defendant permitted the petitioner to substitute another cow for the unsatisfactory one. This substitution, or exchange was made on October 19, 1951. The cow received in this exchange is the one in question in this suit.
On October 20, 1951, this cow gave birth to a calf. The calf was exceedingly small and apparently abnormal, and died several weeks later. On Monday, October 22, 1951, the petitioner had the State Veterinarian take a blood sample of the cow, and the results showed that the said cow was suffering with Bang’s disease. In addition to the calf being abnormal, the cow showed other signs of having Bang’s disease within three days of the sale. One of these symptoms was a “cold short quarter” and another was that the stifle joint of the right rear leg was affected.
The petitioner filed this suit seeking the return of the purchase price of $310, plus $1 per day for feeding and preserving the cow, and a further sum of $1 per day for his toil and labor expended in preservation of the cow. He also seeks $1.55 per day for loss of profit. .
Defendant -first filed an exception of no cause or right of action, which was referred to the merits. He later filed'an answer denying that the cow had' Bang’s disease, and furthermore that the cow was sold with no guarantee whatever.’ ■’
The lower court gave judgment in favor of petitioner in the sum of $393.50, of which $310 was the purchase price of the cow, and $83.50 was for upkeep of the cow at 50‡ per day. The defendant has taken this appeal. ’
The lower court, in its reasons for judgment, stated as follows:
“After the plaintiff selected the cow he desired from several which were in the defendant’s pasture, he then carried the .cow to his home, and on the next day she gave birth- to ■ a calf, which was unable to stand up and was very small; plaintiff became suspicious that the cow had Bang’s disease and immediately contacted his brother, Dr. W. W. Knight, a Veterinarian, .who reached -the conclusion that the .cow was infected with Bang’s disease, due to the fact she had a swelling in the knee, or the stifle joint. , Dr. Knight drew blood from this cow for the purpose of having a test made for Bang’s disease, and even though there is considerable ■ conflict in the testimony as to whether the exact blood which he drew was the blood which was subsequently tested, I am satisfied from all the testimony the tube which was numbered 9 was the one which contained the blood from this cow, and a testing of this blood- by Dr. C. B. Jamieson, a laboratory technician at- the Louisi *390 ana State Livestock Laboratory, showed that 'the cow actually had Bang’s disease. Dr. Knight’s testimony further showed if a cow had Bang’s disease her value was decreased due to the fact you could not sell the milk from said cow because it was 20% sterile or better, and further than this, the crippled condition of the cow due to the swelling of the knees made her unfit for dairy purposes, and further than this, it was bad practice for a dairyman to permit the cow with Bang’s disease in his herd for the reason that the disease was contagious and would spread throughout the entire herd.
“Since I am of the opinion that this cow was infected with Bang’s disease within one day subsequent to the exchange, and since I am of the further opinion that at the time of the exchange that the defendant warranted the cow not to he infected with said disease, then the question to be resolved is whether or not the plaintiff is entitled to a rescission and return of the price under said exchange.
“Article No. 2660 of the LS'A-Civil Code defines exchange as a contract by which the parties to the contract give to one another one thing for another, whatever it may be except money, and Article No. 2667 of the LSA-Civil Code clearly shows that the rules relative to rescission of a sale for red-hibitory vices is equally applicable to the transaction of exchange.
“Article No. 2520 of the LSA-Civil Code provides that redhibition is the avoidance of a sale upon some vice or defect in a thing sold which renders it actually useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice. Article No. 2524 of the LSA-Civil Code classifies the latent defects of animals in two classes, i. e., vices of body and vices of character, and Article 2525 of the LSA-Civil Code defines the actual and relative vices of the body of animals. Article No. 2530 of the LSA-Civil Code provides that the buyer who institutes the redhibitory action must prove that the vice in said animal existed before the sale was made to him, and further provides if the vice appears within three days following the sale it is presumed it existed prior to the sale.
“The evidence in this case is overwhelming that the vice of Bang’s disease in this animal appeared within less than three days from the date of the sale, or to be more specific, within one day thereafter, and since I am of the opinion that the defendant guaranteed this animal to be free from said Bang’s disease, I see no reason why this plaintiff under the circumstances should not recover $310.00 even though it is shown he exchanged another cow for the one which is infected with this disease. While it is true it might be said he should have sought the return of the cow which he gave in exchange, the possibility that defendant had this exchanged cow at the time of the filing of the suit is indeed remote, and since the evidence convinces me that this cow that was given in exchange by the plaintiff was originally purchased for $310.00, it seems to me that substantial justice will be done by awarding to the plaintiff a money judgment in the sum of $310.00 upon his return to the defendant of the cow which he now has in his possession, and which has been found to be infected with Bang’s disease. It certainly stands to reason that the plaintiff in this case would never have made this exchange had he known the cow was infected with Bang’s disease for the reason that the evidence reflects that she was not fit for the purposes intended, i. e., a milch cow.”
After a careful reading of the record in this case, we are of the opinion that the *391 court was correct in its findings. The evidence clearly establishes that the cow was infected with Bang’s disease one or two days after it was acquired by the petitioner. It appears that the transaction wherein the petitioner acquired the diseased cow, however, was more of a substitution than an exchange. Upon being dissatisfied with the cow that 'he had originally purchased, the defendant advised petitioner that he would give him another cow in its stead. It appears that the second cow was substituted for the first. Certainly this was the understanding of the petitioner, as he was of the opinion that the second cow was subject to the Chattel Mortgage which was entered into at the time of the first, or original, transaction.
Several witnesses testified’that the cow was guaranteed by defendant against Bang’s disease and T. B. Although the contract stated that the cows were sold “as is”, we are confronted with evidence that-the said guarantee was verbally made by defendant. The wording of the contract, in this respect is vague, in its statement “cows sold as is at the barn”. It is to be first observed that it is well established in this state that a vendor warrants the thing sold as being fit for the intended purpose, unless said warranty is expressly waived. See LSA-C.C. Article 2475, 2476, and Savoie v. Snell, 213 La. 823, 35 So.2d 745. There is a serious question to our minds as to whether the plaintiff expressly waived the warranty as provided by our code but, be that as it may, our attention has been called to the case of United Motor Car Company, Inc., v. Drumm, 3 La.App. 741, wherein the Orleans Court, of Appeal had this to say:
“Warranty is an implied condition in all sales. But the automobile in this case was, under express stipulation of the parties, purchased by the defendant ‘As is’.
“The use of these words in a contract of sale means, we take it ‘as it is’, and as applied to the automobile sold by plaintiff it was purchased ‘as it was’. We would not wish to be understood as holding that the presence of these words in a contract of sale would amount to a wáiver of all warranty by the purchaser. But, certainly, the phrase modifies the warranty implied. If, however, the thing sold, the automobile in this case is not fit for the use for which it was' intended; for example, if it would not run, the fact that it was sold ‘as is’ would not prevent a rescission of the sale for one of the characteristics of an automobile as its name suggests, is the ability to run on its own power.”’'
We can very easily paraphrase the above quote by saying that the use of these words in a contract of sale means, we take it, “as it is at the barn”, and as applied to the milch cow sold by defendant it was, purchased “as it was at the barn”. We would not wish to be understood as holding that the presence, of these words in a contract óf sale would amount to a specific waiver of all warranty by the purchaser. Certainly the phrase modifies the warranty implied, but we are of the opinion that the phrase herein quoted does not expressly waive the warranty which the vendor makes under the law that the thing sold is fit for the intended purpose. If the thing sold, the milch cow in this case, is not fit for the use as a dairy cow for which it was intended; for example if it could not be milked as a dairy cow or a milch cow, the fact that it was sold “as is at the barn”, would not prevent a rescission of the sale for one of the characteristics of a milch cow, as its name suggests, is the ability to be able to milk the cow and use the milk in the dairy business. There is no question in our opinion that the milch cow in question was not fit for the purpose intended by the buyer and seller.
For the reasons assigned, the judgment of the lower court will be affirmed,.-costs of this appeal to be paid by defendant.
Judgment affirmed.