(Mrs.) Myra RATLIFF, Wife of, and Dolphus Jacob, Plaintiffs,

v.

PORTER CABLE COMPANY OF NEW YORK and Its Insurer Liberty Mutual Insurance Company; New Orleans Armature Works and Its Insurer Liberty Mutual Insurance Company; Service Supply & Engineering Company and Its Insurer United States Fidelity and Guaranty Company; Service Equipment Company, Inc. and Its Insurer Liberty Mutual Insurance Company; and John W. Sharp; and Mrs. Roger P. Sharp, Defendants.

Civ. A. No. 10428, Division D.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 7, 1962.

Dowling & McBride, John P. Dowling, Calvin H. McBride, New Orleans, La., for plaintiffs.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John V. Baus, New Orleans, La., for Porter Cable Co. and Liberty Mut. Ins. Co.

Chaffe, McCall, Phillips, Burke, Toler & Hopkins, James G. Burke, Jr., Edmund McIlhenny, New Orleans, La., for Service Supply & Engineering Co.

AINSWORTH, District Judge.

This is a motion for summary judgment filed by defendant, Service Supply & Engineering Company.

On August 1, 1958, Service Supply & Engineering Company sold to Otis W. Sharp & Sons, Inc., the employer of plaintiffs' son, a 7-inch Porter Cable electric power saw in the original container in which it was received from the manufacturer. Plaintiffs' son was killed by electrocution while using the saw in the construction of a swimming pool on October 1, 1959, more than a year subsequent to the sale of the saw, while in the course and scope of his employment. There is an allegation in the complaint that the saw was repaired prior to the accident by someone other than the vendor. The manufacturer of the saw also has been sued, and plaintiffs' claim against it is not affected by this motion.

In an affidavit supporting the motion, one of the partners of Service Supply states that the saw kit was never disassembled for inspection or repairs by any partner or employee of the company; that the saw was delivered in the same condition and order as received from Porter Cable Company of New York, the manufacturer of the saw; that Service Supply is a distributor for Porter Cable products but does not maintain any facilities or personnel for repairing or assembling any mechanical equipment or tools.

The facts are not in dispute, no countervailing affidavits having been filed. We hold that mover is entitled to summary judgment as a matter of law for the following reasons:

Plaintiffs allege that the electric saw and its appurtenant parts were in a defective and dangerous condition which resulted in the electrocution and death of their son; that it was Service Supply's duty to inspect the saw prior to selling it, and its failure to do so constituted actionable negligence.

██ A retailer is not liable to his vendee for breach of implied warranty in the absence of knowledge of the deleterious condition of the product. Lesher v. Great Atlantic & Pacific Tea Company, 129 So.2d 96, La.App. (2 Cir. 1961). The only duty imposed upon the vendor under Louisiana law is the duty to declare the vices which are known by the vendor. LSA–Civil Code Article 2531 provides:

"The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses."

LSA–Civil Code Article 2545 provides:

"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."

This knowledge may not be imputed to a retailer. Boyd v. J. C. Penny Co., 195 So. 87, La.App. (1 Cir. 1940).

██ There is no allegation that Service Supply knew of any defect or vice in the saw; there are no countervailing affidavits by plaintiffs to deny that the saw was delivered in the same order and condition as received by the vendor from the manufacturer. The only question to consider is whether it was incumbent upon the vendor to inspect the saw prior to sale to determine the possibility of an inherent vice or defect. The law is clear that no such duty lies.

In Strother v. Villere Coal Co., Inc., 15 So.2d 383, La.App. (Orleans, 1943), an action was brought against a coal dealer for personal injuries sustained as the result of an explosion occurring in the fireplace of plaintiff from the alleged presence of a bullet which had become mixed with the coal. The Louisiana Court of Appeal, Orleans Division, held that "in the absence of proof that the dealer had knowledge of the presence of the dangerous matter or should have discovered it by reasonable inspection, he is not liable."

In Prosser on Torts, § 83 (2d Ed. 1955), it is stated:

"There is general agreement, for example, that the responsibility of a retail dealer who sells products made by another does not extend to the opening of sealed containers, or to taking the goods apart, or indeed to any examination or inspection at all, where it would normally be regarded as unnecessary. It is only where he has some reason to believe that the product may be defective that he is required to do more than handle it in the ordinary way."

In 1 Products Liability, Frumer-Friedman, § 18.03(1) (a), the majority view as to the duty of a retailer to inspect for latent defects is discussed:

"It is the majority view that a retailer who purchases from a reputable manufacturer and sells the product under circumstances where he is a mere conduit of the product is under no affirmative duty to inspect or test for a latent defect, and, therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it."

In Restatement of the Law, Torts, § 402, comment *a* at 1089 reads as follows:

"A wholesale or retail dealer, who sells in their original packages goods bought from reputable manufacturers, acts as a conduit through which the goods pass from manufacturer to consumer, who buys them in reliance upon the manufacturer's reputation for competence and care. A vendor of such goods, therefore, is under no duty to subject them to rigid inspection or tests before selling them."

In summary, there is no showing that Service Supply knew of any defect or vice in the instrument (the long and continual use of the saw by decedent's employer without incident strongly suggests that there was no defect in the instrument when sold by Service Supply); however, even assuming the presence of a defect when sold, there was no duty by the retailer to uncrate and inspect the saw.

Defendant's motion for summary judgment is, therefore, granted.