**Hester and Nicholas M. ROSS, Jr., Plaintiffs-Appellants,**

v.

**JOHN'S BARGAIN STORES CORPORA-TION et al., Defendants-Appellees.**

**No. 71-2758.**

United States Court of Appeals,
Fifth Circuit.

July 7, 1972.

Rehearing Denied Sept. 12, 1972.

---

Adolph J. Levy, New Orleans, La., for plaintiffs-appellants.

Breard Snellings, New Orleans, La., for John's Bargain Stores Corp.

Bruce J. Borrello, New Orleans, La., for Liberty Mutual & Cone Mills.

Albert H. Hanemann, Jr., New Orleans, La., for Spartan Industries, and Jack M. Alltmont of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., for John's Bargain Stores Corporation, appellee.

Before GEWIN, COLEMAN and INGRAHAM, Circuit Judges.

GEWIN, Circuit Judge:

Hester and Nicholas Ross, appellants, brought this wrongful death diversity action against retailer, John's Bargain Stores Corporation (John's), appellee. The Ross's daughter, 7 year old Patricia Ann Ross, died as a result of burns received when her nightgown which had been purchased from John's caught fire. The complaint also named the manufacturer of the nightgown as a defendant; this suit, however, does not involve that claim. Without stating its reasons, the district court granted John's motion for summary judgment. The parents appeal. We reverse.

John's is a large discount retailer with headquarters in New York City. It has or has had warehouses in New York, New Jersey, Maryland, Pennsylvania, Illinois, Georgia, Alabama and Puerto Rico. The nightgown involved here was allegedly purchased by Patricia Ann's grandmother from John's New Orleans store and then given to Patricia Ann.

Mr. and Mrs. Ross described how their daughter was burned in their depositions. According to Mrs. Ross, Patricia Ann was standing or sitting in the living room about a foot away from a butane heater watching television and coloring. She was wearing the night-gown given to her by her grandmother. Neither of the parents actually saw the gown catch fire but both stated that it burned unusually fast; Mrs. Ross said it "burned like gas." Mrs. Ross further stated that on the way to the hospital Patricia Ann told her, "the fire jumped to my gown, Mama. That is why I am burned." Patricia Ann subsequently died from the burns.

John's argues in support of the district court's summary judgment that under the Louisiana redhibition statutes a retailer who has no knowledge of alleged defects cannot be held liable to the purchaser, citing La.Civ.Code Arts. 2531, 2545, which provide:

Art. 2531. The seller who knew not the vices of the thing, is only bound to restore the price and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.

Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages.

Thus because it has filed uncontroverted affidavits that it had no such knowledge, John's asserts summary judgment was appropriate.

The Rosses contend that John's may not rely upon articles 2531 and 2545 because their claim is in negligence, not warranty, and is not limited by any actual knowledge requirement. They contend that John's may be held liable if it knew or *should have known* of the dangerous propensity of the nightgown to burn. La.Civ.Code Art. 2315 provides the basis for such an action:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

To some extent we believe both parties are correct. Admittedly the law of Lou-

isiana is not entirely clear on the issue presented.[1]

In Langlois v. Allied Chemical Corporation[2] the Louisiana Supreme Court held a chemical corporation liable for injuries to a fireman caused by gas leaking from the corporation's premises. In doing so, the court stated the judicial procedure to be followed in deciding a tort case in Louisiana:

[I]t becomes clear that in the decision of a case in tort or delict in Louisiana, the court first goes to that fountainhead of responsibility, Articles 2315 and 2316, and in applying those articles it goes to the many other articles in our Code as well as statutes and other laws which deal with the responsibility of certain persons, the responsibility in certain relationships, and the responsibility which arises due to certain types of activities. Just as we have found in the Code many standards of conduct, many statutes and local ordinances also detail standards of conduct which courts may apply per se, impliedly or by analogy. Criminal laws, traffic regulations, zoning laws, health laws, and others may and often do set the standard for lawful conduct in personal relationships, although they are designed for societal protection and incorporate penalties and specific consequences for their mere breach.[3]

The court then noted that Article 669, governing the responsibility of manufacturers for smoke and nauseous smell to neighboring houses, had application in the case before it. Significantly, the court added that its jurisprudence had not limited recovery for damage for such activities to those in the neighborhood but had included adjoining landowners, tenants and third parties. In essence the court was saying that a defendant may not take refuge behind an apparently applicable code section just because it does not specifically include the injured plaintiff's class.

Mr. and Mrs. Ross would have us begin and end with article 2315; John's would permit us to begin with 2315 but demands that we end with articles 2531 and 2545. In a sense we do both.

Mr. and Mrs. Ross were not the buyers of the nightgown, hence under a strict interpretation of articles 2531 and 2545 these statutes would be inapplicable. Langlois, however, indicates that a third party might be deemed by judicial interpretation to be owed the same obligation as a purchaser. Such an approach was in fact if not intentionally followed by the United States District Court in the diversity case of Ratliff v. Porter Cable Co.[4] In Ratliff plaintiff's son was killed by electrocution in the construction of a swimming pool while using a saw purchased by his employer from the defendant-vendor. The court held, however, that the vendor's only duty under Louisiana law was to declare the vices which were known to him and that he had no duty to inspect the product. The court quoted articles 2531 and 2545.

Despite the apparent strict adherence to an actual knowledge requirement, closer scrutiny of the authority relied upon by the Ratliff court reveals that something less may suffice. In Boyd v. J. C. Penney,[5] cited by the court, the

---

1. *See* Note, Defective Products—Vendor's Liability, 28 La.L.Rev. 270 (1968), wherein the author states:
   "The purpose of this Note is to illustrate the confused state of Louisiana law concerning the vendor's liability for harm caused by a defective product."

2. 258 La. 1067, 249 So.2d 133 (La.1971). The opinion in *Langlois* illustrates the unsettle state of the Louisiana law in the area of that state's law under consideration. The court stated:
   Their [the parties] dilemma is partially the result of inconsistence in jurisprudential assignment of a legal basis for allowing recovery for damages resulting from the dangerous and harmful activities and enterprises.

3. *Id.* at 137.

4. 210 F.Supp. 957 (E.D.La.1962).

5. 195 So. 87 (La.App.1940).

Louisiana court of appeals stated that the defendant-vendor did not know of the vices at the time the product was sold, "nor did it *have any reasonable means of knowing or ascertaining before selling*".[6] And in Strother v. Villere Coal Co.,[7] also cited by the district court, the Louisiana appellate court held, "[I]n the absence of proof that the dealer had knowledge of the presence of the dangerous matter or *should have discovered it by reasonable inspection,* he is not liable."[8] The *Ratliff* court also cited Prosser on Torts. Prosser too suggests that liability might be predicated on something less than actual knowledge: "It is *only where he has some reason to believe that the product may be defective* that he is required to do more than handle it in the ordinary way."[9]

More recently the Louisiana court of appeal in McCauley v. Manda Brothers Provision Co.[10] stated that a vendor cannot be held liable "unless it is shown that he *knows or should know of the defect* existing therein."[11] The case was affirmed by the Louisiana Supreme Court[12] but without specific comment on the lower court's statement of the standard. Although in none of the preceding cases was liability actually found because a vendor should have known but did not, the standard appears to have been judicially incorporated into the duty owed by a vendor to a purchaser.

But even apart from the redhibition statutes, Mr. and Mrs. Ross contend that John's may be found liable on theory of negligence. The Louisiana authority is somewhat ambivalent. In cases involving suits by purchasers against vendors, the Louisiana courts have on occasion limited plaintiff-purchasers to recovery under the redhibition statutes.[13] There are, however, other cases in which the Louisiana courts have at least acknowledged that upon proper proof a purchaser or even a third party may recover from a vendor on a theory of negligence.

In Moore v. Jefferson Distilling & Denaturing Co.[14] the Louisiana Supreme Court held that one who was not in privity with the vendor could not sue on the vendor's warranty. Rather, said the court, "If recovery is had by plaintiff, it must be predicated upon the basis of a duty imposed by law."[15] The test for liability stated by the court was whether the product was "intrinsically or inherently dangerous to [human] life." In *Moore* the court found that the drum which exploded was not so dangerous as to render the vendor liable. The plaintiff had carelessly placed a lighted match to the bunghole of the drum to see if the drum was a used one.

*Moore* was followed in Gordon v. Bates-Crumley Chevrolet Co.[16] In *Gordon* the Louisiana court of appeal held that a guest injured while riding in an automobile was limited to a suit in tort against the vendor of the automobile. Relying on *Moore* and finding that an automobile is not an intrinsically and inherently dangerous instrumentality, the court denied relief.

In McCauley v. Manda Brothers Provision Co.,[17] the Louisiana Supreme

6. *Id.* at 88 (emphasis added).

7. 15 So.2d 383 (La.App.1943).

8. *Id.* at 385 (emphasis added).

9. Prosser on Torts 383 (2d ed. 1955), quoted in, 210 F.Supp. at 959 (emphasis added).

10. 202 So.2d 492 (La.App.1967).

11. *Id.* at 497 (emphasis added).

12. 252 La. 528, 211 So.2d 637 (1968).

13. Merwin v. D. H. Holmes Co., 223 So.2d 878 (La.App.1969); Penn v. Inferno Mfg. Co., 199 So.2d 210, 216 (La.App. 1967).

14. 169 La. 1156, 126 So. 691 (1930).

15. *Id.* at 693. *See also* Larance v. FMC Corp., 192 So.2d 628, 630 (La.App.1966) (privity irrelevant where action predicated on alleged tortious conduct of dealer).

16. 158 So. 223 (La.App.1935), aff'd on other grounds, 182 La. 795, 162 So. 624 (La.1935).

17. 252 La. 528, 211 So.2d 637 (1968), aff'g, 202 So.2d 492 (La.App.1967).

Court affirmed a decision of the court of appeal in which the plaintiff purchaser had claimed both negligence and breach of warranty against both the vendor and the preparer of prepackaged sandwiches. The trial court granted relief against both defendants. The Louisiana court of appeal reversed as to the vendor but affirmed as to the manufacturer. In doing so the court did not wholly reject the negligence theory but simply found no evidence in the record to indicate any negligence on the part of the vendor.[18] The plaintiff did not seek certiorari and the supreme court's opinion was concerned with the manufacturer's efforts to compel contribution from the vendor.

In D'Allesandro v. Edgar Murray Supply Co.,[19] a widow brought suit against the vendor of a defective grinding stone which had allegedly caused her husband's death. The Louisiana court of appeal noted that the "theoretical basis" of the widow's claim against the vendor appeared to be in tort under article 2315, but concluded that there was absolutely no evidence of any negligence on the part of the vendor. Apparently if negligence had been proved the court would have permitted recovery on that basis.

And finally, in Larance v. FMC Corporation[20] a retailer was held along with the manufacturer to have been "derelict in his duty" to warn a purchaser of the dangers attendant upon improper use of the product. The defendants had failed to warn the purchaser that the chemical compound he had been sold, if used full strength, would damage crops. The Louisiana court of appeal made no mention of the redhibition statutes; the opinion sounded solely in negligence.

The foregoing cases convince us that the Louisiana courts have accepted negligence as a basis for recovery against a vendor in a case of this type. Negligence is broad in scope and clearly is not bound by any strict knowledge requirement.

■ We make no attempt in this diversity case to decide whether Mr. and Mrs. Ross's theory of recovery should be in negligence or under the redhibition statutes. In our view the Louisiana courts have left the door open for a purchaser or third party to recover against a vendor under either theory. We conclude that in Louisiana, upon proper proof, a vendor may be held liable for injuries caused by a defective product if he knew or *should have known* of the defect at the time of sale.

■ We hasten to add that we do not hold that negligence may be imputed to a vendor as is done in Louisiana in suits against manufacturers.[21] Under Louisiana law actual fault must be shown in order for a negligence claim against a vendor to succeed.

■■ This court has repeatedly held that negligence cases are generally inappropriate for summary judgment.[22] This one is no different. Summary judgment is particularly inappropriate where the issue involved is the state of mind of the defendant.[23]

■ Mr. and Mrs. Ross allege that John's was negligent in selling a garment without a warning which it knew or should have known was inherently and imminently dangerous due to its dangerous propensity to burn. John's

---

18. 202 So.2d at 497.

19. 185 So.2d 34 (La.App.1966).

20. 192 So.2d 628 (La.App.1966).

21. *See, e. g.,* Weber v. Fidelity & Casualty Insurance Co., 259 La. 599, 250 So.2d 754 (1971); Samaha v. Sou. Rambler Sales, Inc., 146 So.2d 29 (La.App.1962); Gordon v. Bates-Crumley Chevrolet Co., 158 So. 223, 230–231 (La.App.), aff'd,

182 La. 795, 162 So. 624 (1935). *See also* Soileau v. Nicklos Drilling Co., 302 F.Supp. 119, 124–125 (W.D.La.1969).

22. Gross v. Southern Rwy., 414 F.2d 292, 296 (5th Cir. 1969); Gauck v. Meleski, 346 F.2d 433, 437 (5th Cir. 1965); 6 Moore Federal Practice ¶ 56.17 [42], at 2583.

23. Croley v. Matson Navigation Co., 434 F.2d 73, 77 (5th Cir. 1970).

denied in its affidavits that it knew of the gown's dangerous nature. Mr. and Mrs. Ross responded with an opposing affidavit which included various magazine articles and other literature designed to show that widespread publicity had been given to the serious problem of children's flammable night wear.

Whether John's knew or should have known of the dangerous nature of the gown is a question properly left to the trier of fact. Because that issue remains we conclude that the district court erred in granting summary judgment for John's.

Reversed and remanded.