Herman Wilson JONES, Plaintiff,

v.

Paul D. MENARD, Defendant-Third-Party Plaintiff,

v.

ST. CHARLES STEEL FABRICATORS, INC., Third-Party Defendant, Third-Party Plaintiff-Appellant,

v.

GLAZER STEEL CORPORATION, Third-Party Defendant-Appellee.

No. 75-3806.

United States Court of Appeals, Fifth Circuit.

Sept: 28, 1977.

William A. Porteous, III, New Orleans, La., Francis Dugas, Thibodaux, La., R. Lee McDaniel, New Orleans, La., for plaintiff.

Robert M. Contois, Jr., New Orleans, La., for Glazer Steel.

Dan C. Garner, R. Lee McDaniel, L. J. Lautenschlaeger, Jr., New Orleans, La., for Menard.

Patrick M. Reily, Cornelius G. Van Dalen, New Orleans, La., for Dixie Mill.

P. A. Bienvenu, New Orleans, La., for Gulf Ins. Co.

Before THORNBERRY and GEE, Circuit Judges, and MARKEY,* Chief Judge.

GEE, Circuit Judge:

Herman Jones, a crewman on the shrimp boat F/V LADY OF GOOD VOYAGE, received severe back injuries when the vessel's 38-foot steel boom broke and fell across his back as he sat on the deck

---

* Of the United States Court of Customs and Patent Appeals, sitting by designation.

repairing a net. Invoking the Jones Act, he sued the owner and operator of the vessel, Paul Menard, who in turn filed a third-party complaint for contribution and indemnity against St. Charles Steel Fabricators, Inc., the designers and builders of the LADY OF GOOD VOYAGE. St. Charles filed its own third-party complaint against Glazer Steel Corporation, which had furnished the 40-foot length of steel pipe from which the boom was fabricated. The skirmish before us involves only the latter two parties, with St. Charles appealing from the district court's entry of summary judgment in favor of Glazer. We reverse.[1]

■ In its third-party complaint St. Charles initiated a breach of warranty action, alleging that Glazer had furnished it schedule 40 pipe [2] unfit for use in constructing the boom for LADY OF GOOD VOYAGE. Louisiana warranty law is contained in the state's redhibition statutes, La.Stat. Ann.Civil Code §§ 2475–76, 2520–48 (1952 & Supp.1977), which impose upon a seller the warranty that its goods are reasonably fit for the purpose intended by both parties to the sale. *Media Production Consultants, Inc. v. Mercedes-Benz*, 262 La. 80, 88, 262 So.2d 377, 380 (1972); *Knight v. Davenport*, 71 So.2d 388, 391 (La.Ct.App.1954). Under Louisiana law manufacturers are presumed to know the vices in their products and for that reason are held strictly liable for damages caused by the use of their defective goods. *See Rey v. Cuccia*, 298 So.2d 840, 845 (La.1974). It appears that this presumption, however, does not extend to nonmanufacturing sellers, *see Peltier v. Seabird Industries, Inc.*, 243 So.2d 112, 113 (La. Ct.App.1971), *cert. denied*, 309 So.2d 343

(1975); consequently, retailers, such as the appellee in this case, seem to be held liable for personal injuries resulting from breach of warranty only upon a showing of negligence,[3] *see* La.Stat.Ann.Civil Code arts. 2531, 2545 (Supp.1977); *Ross v. John's Bargain Stores Corp.*, 464 F.2d 111 (5th Cir. 1972); *McCauley v. Manda Brothers Provisions Co.*, 202 So.2d 492, 497 (La.Ct.App. 1967); Robertson, *Manufacturer's Liability for Defective Products in Louisiana Law*, 50 Tul.L.Rev. 50, 72–73, 103–04, 107–08, 113 (1975). These same distinctions between manufacturing and nonmanufacturing sellers also obtain in cases brought under tort rather than warranty theories. *Compare Weber v. Fidelity & Casualty Insurance Co.*, 259 La. 599, 250 So.2d 754 (1971) (strict liability in tort imposed on manufacturer) *with Ross v. John's Bargain Stores Corp.*, *supra*, and *Peltier v. Seabird Industries, Inc.*, *supra* (both cases holding that nonmanufacturing seller is liable only if negligent). *See also* Robertson, *supra* at 72–73.

■ Glazer responds to St. Charles' complaint with the contentions that it did not know the purpose for which appellant purchased the pipe and that St. Charles asked no advice from Glazer in selecting the material for the ship's boom. These are straw men, however, for appellant does not claim that Glazer should have warned against using schedule 40 pipe as a boom, nor does St. Charles assert that it relied on any express recommendation of the pipe. Instead, appellant says that serviceable steel pipe with walls a quarter of an inch thick should not suddenly collapse, and with this assertion we cannot quarrel. The only question raised by the particular use made of the pipe is whether St. Charles selected a

---

1. We have jurisdiction to hear this appeal because the district court's order granting summary judgment contains an express finding, pursuant to Rule 54(b), Fed.R.Civ.P., that "there is no just reason for delay in entry of final judgment . . . ." *Scott v. Board of Supervisors*, 336 F.2d 557, 558 (5th Cir. 1964).

2. Schedule 40 pipe has a diameter of six inches and a wall thickness of .280 inches.

3. Negligence may be hard to prove in this case, since Glazer apparently had no obligation to search for hidden defects, "the duty of the

vendor of such products [as a new boat or automobile] fulfilled if he performs the routine, normal inspections in the business upon receipt of the product, checking and discovering those defects which are patent and obvious." *Peltier v. Seabird Industries, Inc.*, 304 So.2d 695, 700 (La.Ct.App.1974), *cert. denied*, 309 So.2d 343 (La.1975). Glazer, however, did not seek summary judgment on the ground that no issue of negligence was raised by the facts, and the judgment does not rest on any such consideration.

grade of pipe too weak for the purpose intended.[4] If this be true, and if Glazer could so establish as a matter of law, doubtless it would be entitled to summary judgment. It has yet to do so, however. Assuming that the trial court correctly rejected St. Charles' proffer of Captain Menard's affidavit and Mr. Reineke's report,[5] there

remains the deposition of Murray Reed, a crewman of the vessel who stated that the boom broke when under no load. This testimony at least raises an inference that the pipe may have been flawed, as does also the drawing attached to Reed's deposition, which indicates that the boom collapsed at its top and not near the deck end, where a

**4.** If St. Charles chose the wrong pipe for the job, it was guilty of misusing the product. Misuse is a traditional defense in products cases; it began in suits brought under negligence theories and was later carried over to strict liability actions. *See* W. Prosser, Handbook of the Law of Torts § 102, at 668 (4th ed. 1971). Misuse is a multi-faceted concept, which can best be understood in context. There are three types of products cases: those alleging inadequate warning, those alleging inadequate design, and the more common case of defective manufacture. *See Rey v. Cuccia*, 298 So.2d 840, 844 n. 2 (La.1974) (discussing inadequate warning and inadequate design); *Fox v. American Steel Bldg. Co.*, 299 So.2d 364 (La.Ct.App.1974) (defective manufacture); *Gauthier v. Sperry Rand, Inc.*, 252 So.2d 129 (La.Ct.App.) *cert. denied*, 259 La. 940, 253 So.2d 382 (1971) (defective warning and design); *Albert v. J. & L. Engineering Co.*, 214 So.2d 212 (La.Ct.App.1968) (warning and design case). *See also* W. Prosser, *supra*, § 99, at 659. In inadequate warning cases misuse means that the seller had no duty to warn against unforeseeable uses of its products, while in design cases misuse means that the manufacturer had no duty to design a product so as to prevent injuries arising from unforeseeable uses of that product. In *Rey v. Cuccia* both of these arguments were rejected. 298 So.2d at 844 n. 2. In defective manufacture cases, however, misuse means that the injury was not caused by some inherent defect in the product but by the consumer's abnormal use of it. *See Fox v. American Steel Bldg. Co.*, 299 So.2d at 372 (misuse of crane rather than defect in product alleged to have caused accident); *Meche v. Farmers Drier & Storage Co.*, 193 So.2d 807 (La.Ct.App), *cert. denied*, 250 La. 369, 195 So.2d 644 (1967) (improper installation of elevator, not defective product, found as cause of accident). Since in the case at hand St. Charles is claiming that Glazer furnished it with defectively manufactured pipe, the defense of misuse goes to the element of causation. Thus, it is irrelevant that Glazer did not know the purpose for which St. Charles purchased the pipe; the pertinent questions are whether the pipe in fact failed and, if so, whether that failure was caused by a flaw in the metal or by appellant's misuse.

**5.** Captain Menard stated in his affidavit three things of importance to this case: (1) the boom was not loaded when it broke, (2) the break

occurred at the top of the boom rather than at the deck end, and (3) the boom had never been overloaded. Mr. Reineke wrote a three-page report on stationery presenting himself as a "Naval Architect-Marine Engineer" and as a registered professional engineer of the state of Louisiana. Reineke concluded that the boom failed from fatigue and suggested that Glazer had furnished higher quality steel than St. Charles had requested, which may have meant that different welding rods should have been used for constructing the boom.

Reineke's report seems clearly inadmissible at a hearing on a summary judgment motion. First of all, Reineke himself was not qualified as an expert. His report, therefore, provides no proof of evidence that St. Charles could have adduced at trial, which is of course what a summary judgment proceeding is designed to uncover, *see Slagle v. United States*, 228 F.2d 673, 679 (5th Cir. 1956), *quoting Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir. 1940). Beyond this serious shortcoming, the Reineke report satisfies none of the evidentiary requirements set forth in Rule 56(c): it is not a sworn affidavit, an interrogatory, a deposition, or an admission. "Material that does not come within [the categories enumerated in Rule 56(c)] should not be considered." 6 Moore's Federal Practice ¶ 56.11 [1–8], at 56–207 (2d ed. 1976) (footnote omitted). *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155 n. 19 (1970) (witness' statement, offered in opposition to motion, implied as not complying with Rule 56(c) because unsworn); *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (answers to interrogatories not to be considered in opposition to motion because, *inter alia*, not verified); *Piper v. United States*, 392 F.2d 462, 464 (5th Cir. 1968) (denials in unverified pleading insufficient to controvert affidavit offered in support of motion). *See also* 6 Moore's Federal Practice ¶ 56.22[1] at 56–1304 n. 5 (2d ed. 1976) ("Unsworn statements cannot be considered.").

As to Menard's affidavit, it was submitted during oral argument on the motion rather than being served prior to the day of the hearing, as Rule 56(c) requires; thus, it ran afoul not only of the Federal Rules of Procedure but also of the trial court's inherent power to control the proceedings before it.

greater moment of force would be felt and the effects of overloading would most likely have appeared. Glazer attempted to rebut this evidence with the deposition of its expert, Dr. Harold Jack Snyder, a metallurgist who opined that the pipe's failure was attributable to overloading. Dr. Snyder also stated under oath his findings that the steel pipe sold by Glazer to St. Charles met or exceeded the specifications of schedule 40 pipe. While this evidence may indicate that the stress of hauling in shrimp will gradually weaken schedule 40 pipe to the breaking point, it falls far short of settling the matter of why the boom collapsed while under no stress. Consequently, a genuine issue of fact exists, which requires that the trial court's grant of summary judgment be

REVERSED.

THORNBERRY, Circuit Judge, specially concurring:

Although I am in complete agreement with a reversal on the ground that summary judgment was improper, I have trouble with footnote 5 of Judge Gee's opinion, which intimates that the trial court's refusal to consider the Reineke Report and Captain Menard's affidavit was correct. Certainly this language is unnecessary to our disposition of this case.

The fact that the Reineke Reports was unsworn hardly seems to be an insurmountable problem. If the trial court was seriously concerned with determining if evidence did exist, it had the capability to "test this out" by requesting that the appellant submit a supplemental affidavit—simply the same report, this time sworn. Rule 56(e), Fed.R.Civ.Proc. Such procedure is consistent with the purpose of summary judgment: to inquire and determine whether competent evidence exists. *See* C. Wright, Law of Federal Courts § 99, at 492 (3d ed. 1976).

Likewise, the rejection of Captain Menard's affidavit, submitted in proper form but on the day of the hearing, was perhaps not an abuse of discretion. Again, however, it seems the trial court seized upon an available technicality to exclude sound evidence, in contravention of the truism that courts should grant opponents all benefits of doubt in summary judgment proceedings. I cannot improve on the words of the eminent Judge Hutcheson, who remarked:

> It is quite clear that technical rulings have no place in this [summary judgment] procedure and particularly that exclusionary rules will not be applied to strike, on grounds of formal defects in the proffer, evidence proffered on tendered issues.

*Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir. 1940).