John H. GORDON, Plaintiff-Appellant,

v.

Jack WATSON, III and George Cansler, Defendants-Appellees.

No. 79-2631
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 21, 1980.

---

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

John H. Gordon, pro se.

William K. Howell, Jr., Senior Asst. County Atty., DeLand, Fla., Gene White, Asst. State's Atty., Daytona Beach, Fla., for defendants-appellees.

Before CHARLES CLARK, VANCE and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

While a pre-trial detainee, John H. Gordon filed this action under 42 U.S.C. § 1983 against Jack Watson, III, a Florida assist-ant state attorney, and George Cansler, the Director of the Volusia County Jail Department of Corrections. Gordon's complaint and amended complaint alleged that he was subjected to punitive confinement after complaining to a judge that Watson and Cansler had denied him telephone privileges. The district court granted summary judgment for the defendants, ruling that "there is no issue of fact as to punitive confinement" and that the denial of Gordon's access to the telephone did not violate his constitutional rights. Because we find that the proffered materials are insufficient to support the grant of summary judgment, we vacate and remand.

Gordon had been in custody at the Volusia County Jail since February 1978, when he failed to post bond on an arrest for possession of a controlled substance. On March 4 or 5, according to Gordon's allegations, Gordon was denied visitors and perhaps telephone privileges.[1] On April 5, 1978, the Volusia County grand jury returned a four-count indictment against Gordon for first degree murder, conspiracy to commit murder, possession of a firearm by a convicted felon, and use of a firearm in the commission of a felony. On April 6, Gordon was brought before a judge to be formally arrested on the above charges. At that hearing, he complained to the judge that Cansler, under the direction of Watson, had denied him telephone privileges.

When Gordon returned to the Volusia County Jail that day, Cansler, at Watson's request, moved Gordon to the Volusia County Annex facility and limited Gordon's access to the telephone, allowing him to call only his attorney. The next day (April 7), Cansler, again at Watson's direction, moved Gordon from the annex back to the main facility of the Volusia County Jail, where he once again had access to the telephone.

On April 13 Gordon filed this complaint. Pursuant to court order, he amended his

---

**1.** Gordon's original complaint alleged that he was denied visitors March 4, 1978. March 4 was a Saturday; regulations permitted visitors in the Volusia County Jail on Sundays only. In his "Answer to defendants Motion for Summa-ry Judgment and answer to amended Civil Rights Complaint," however, Gordon suggested that the decision was taken on March 4 to deny him visitors on March 5, the regular visiting day.

complaint on May 12 to allege that he had been "subjected to punitive confinement and isolation confinement and [had been] placed in the hole after telling Judge Griffin of the denial of phone call [sic] by officers under George Cansler by order of Jack Watson." He sought release from maximum security confinement, some contact visits, rules to protect other prisoners, and $300,000.00 in damages. By the time of the amended complaint (and perhaps as early as April 7) and until August 18, Gordon was incarcerated in a number of one-man cells. Over the next several months he was transferred several times back and forth between the Volusia County Jail and a state correctional facility, where he now remains. He was confined at various times in both one-man cells and so-called "population" cells during his remaining confinement at the Volusia County Jail.

After he had filed the amended complaint, Gordon moved for an order seeking his release from maximum security. The defendants filed a response to the motion, verified by Edward Froman, a Lieutenant in the Volusia County Jail and acting Chief Correctional Officer, which stated that Gordon was being held in one-man cells "due to the seriousness of the convictions and the pending charges." Before the court ruled on the motion, Watson and Cansler moved for summary judgment, attaching affidavits of Watson and Froman. Watson's affidavit stated that he had restricted Gordon's telephone privileges because he was afraid that Gordon would call certain persons in possession of, or with access to, instrumentalities of the first-degree murder charge, which they might then destroy or conceal. On April 6, the affidavit continued, Watson believed he would be able to get an immediate court order restricting Gordon's phone calls to his attorney. The next day, after researching the issue, Watson determined that such an order was unlikely and he ordered that Gordon be moved back into the county jail facilities, with telephone privileges restored. Froman's affidavit purported to incorporate his earlier verified response to Gordon's motion, in which he had stated that Gordon was incarcerated in one-

man cells due to the seriousness of his crimes. It also recited the frequency of the telephone calls Gordon was allowed to make.

The court did not rule on the summary judgment motion but ordered the defendants to file an answer to Gordon's amended complaint. In their answers, defendants renewed their motions for summary judgment, attaching Cansler's affidavit stating that the entire jail is a maximum security institution, enumerating the cells in which Gordon was housed during his incarceration there, and averring that no cell in the institution is known as "the hole."

Gordon filed no responsive affidavits. Instead, he filed an unsworn, unverified document styled "Answer to defendants Motion for Summary Judgment and Answer to Amended Civil Rights Complaint." He asserted that Watson never sought to obtain the order restricting Gordon's phone calls and as a skilled prosecutor knew that he had no grounds to obtain one. He also stated that Watson's conjecture that Gordon's friends would destroy or conceal evidence was totally without merit because Gordon's house had already been searched. The answer further contended that the defendants had not shown that Gordon was the only one in jail charged with so serious a crime or that he had broken any rule of the facility. In particular, he objected to being placed in one-man cells, in which he was confined from March until August 1978.

In granting the defendants' motions for summary judgment, the district court relied on the affidavits of Watson and Cansler to conclude that there was no issue of fact as to punitive confinement. The court further found that the curtailment of Gordon's access to the telephone for two days was not a constitutional violation because "plaintiff was then represented by counsel, the restriction was for a short period of time, and the plaintiff had ample access to the telephone prior to and subsequent to the brief period of restricted access." In view of the further fact that Gordon was never denied telephone access to his counsel we agree

that any deprivation was slight indeed. However, the unresolved factual basis for the constitutional issue is not the extent of deprivation, but whether the slight was deliberately imposed as punishment for bringing his condition to the attention of the court. This is not addressed by the affidavits supporting summary judgment.

█ The punitive confinement issue has two parts: Gordon's transfer to the annex on April 6 and 7, and his confinement in one-man cells from April 7 to August 18. Watson's affidavit responded to Gordon's allegation that the transfer was for punitive reasons by demonstrating the legitimate administrative reasons for the transfer. Froman's affidavit, on the other hand, establishes that the defendants had legitimate, non-punitive reasons for confining Gordon in one-man cells rather than populated cells only to the extent that it incorporates his earlier verified response. Under the provisions of Rule 56, however, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." No such copy was attached to Froman's affidavit, so the materials that may permissibly have been considered on summary judgment did not resolve the issue of the motive for Gordon's confinement in one-man cells. In certain circumstances a verified pleading may itself be treated as an affidavit in support of a motion for summary judgment, but only if it satisfies the standards for affidavits set out in Rule 56(e). *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965). Froman's verified response would not satisfy those requirements because it does not affirmatively show that he is competent to testify to the matters stated therein or that the facts are based on Froman's personal knowledge. It was therefore error for the district court to grant summary judgment for the plaintiffs on the punitive confinement issue.

█ On the other side of this issue, we note that Gordon's "Answer to defendants

Motion for Summary Judgment" also fails to comply with Rule 56. It is an unsworn statement, which the court may not consider in determining the propriety of summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Piper v. United States*, 392 F.2d 462 (5th Cir. 1968); *Jones v. Menard*, 559 F.2d 1282, 1285 n. 5 (5th Cir. 1977). *See* 6 Moore's Federal Practice ¶ 56.11[1.–8], at 207 (2d ed. 1948); *id.* ¶ 56.22[1], at 1304; 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2738, at 702 (1973). Had it been sworn it would have raised a genuine issue as to the material fact of Watson's motive for moving Gordon to the annex facility and denying him telephone privileges and for incarcerating him in one-man cells. Although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials.[2]

█ Summary judgment is an excellent device by which district courts may make expedited dispositions of those cases in which a trial would be fruitless. When summary judgment is inappropriate because the supporting or opposing materials are improper, the district court has ample discretion to call upon the parties to remedy the defects, by submitting supplemental affidavits or otherwise. *See Jones v. Menard*, 559 F.2d 1282, 1286 (5th Cir. 1977) (Thornberry, J., concurring). *See generally* C. Wright, Law of Federal Courts § 99, at 492 (3d ed. 1976). In the circumstances presented here the district court should have required the parties to correct the deficiencies in their various pleadings and supporting papers if it intended to rely on them for its grant of summary judgment.

Because the entry of summary judgment was improper, we vacate that judgment and remand the action to the district court. Of course, we intimate no opinion on the mer-

---

**2.** Gordon's pleading was notarized. The notarization clearly refers not to the "Answer" itself but to the proof of service.

its of the issues yet to be reached. Furthermore, we intimate no opinion on whether summary judgment may be appropriate or a trial is needed.

VACATED AND REMANDED.