[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15426
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cv-00030-HLM

DAVID S. BENNETT,

Plaintiff-Appellant,

versus

SHERIFF SCOTT CHITWOOD, et al.,

Defendants,

CPT. WESLEY LYNCH,
SGT. GRAHAM WILLIAMS,
OFFICER RYAN ROGERS,
OFFICER GREG SIMS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 23, 2013)

Before CARNES, BARKETT and  EDMONDSON, Circuit Judges.

PER CURIAM:

David Bennett, a Georgia pre-trial detainee proceeding *pro se* and *in forma pauperis*, appeals the district court's grant of summary judgment to defendants on his 42 U.S.C. § 1983 action, alleging (1) deliberate indifference to a substantial risk of serious harm and (2) retaliation for filing the instant section 1983 action and for contacting the local newspaper about jail conditions. He asserts that the magistrate judge erred in denying his motion for discovery; that the district court erred in concluding -- based on his failure to comply with Northern District of Georgia Local Rule 56.1(B)(2) -- that Bennett raised no disputes of material fact in response to defendants' summary judgment motion; and that the district court erred in concluding that defendant jail officials were entitled to qualified immunity. We see no reversible error.

Briefly stated, Bennett's claims stem from defendants' treatment of jail inmates -- including Bennett -- for scabies. In October 2010, jail officials required the inmates to undress, apply a scabies treatment cream to their entire bodies, and remain nude from noon until approximately 10:30 p.m. while their clothes, towels, and bed linens were washed. During this time, Bennett -- who was 42 years old when the incident occurred -- complains that he suffered from cold. Although he

"cannot be certain" of the temperature of his cell, he "estimate[s] it to have been in the 50's."

Bennett later contacted the local newspaper to complain about the scabies incident. When the press contacted Defendant Captain Lynch, Lynch explained that, although the jail guards were mistaken about requiring the inmates to remain naked, it was an honest mistake and that the guards had since been reprimanded. Captain Lynch also commented that Bennett, who was a material witness in a child molestation case, had threatened not to testify on account of this incident. Bennett alleges that Captain Lynch made this comment in retaliation for Bennett's exercising his First Amendment rights, knowing that the comment could jeopardize Bennett's safety. And, as a result of Captain Lynch's statements to the press identifying Bennett as a "jailhouse snitch," Bennett alleges that he was beaten physically by two other inmates.

## I.

We review the district court's discovery decisions for an abuse of discretion. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). A court abuses its discretion by making a clear error of judgment or by applying an incorrect legal standard. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662

3

F.3d 1292, 1307 (11th Cir. 2011).  And "discovery rulings will not be overturned 'unless it is shown that [they] resulted in substantial harm to the appellant's case.'" *Id.*

Federal Rule of Civil Procedure 26, which regulates discovery generally, contemplates that the parties to a lawsuit will request production of documents directly from each other.  *See* Fed.R.Civ.P. 26.  Rule 34, governing production of documents, states that a party may request documents from another party and that the responding party must respond within 30 days from the date of service. Fed.R.Civ.P. 34(a), (b)(2)(A).  If a party fails to respond to a discovery request, then the other party may move to compel a response if the requesting party has certified that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed.R.Civ.P. 37(a)(1), (a)(3).

The magistrate judge did not abuse his discretion in denying Bennett's motion for discovery.  Bennett failed to abide by Rule 26: he did not request that the jail officials produce the documents; he instead applied directly to the magistrate judge.  *See* Fed.R.Civ.P. 26.  Furthermore, he filed the motion 10 days after the commencement of the discovery period, although parties have 30 days to respond to a discovery request.  He also did not certify that he had made a good faith effort to confer or attempt to confer with jail officials.  Thus, the magistrate

4

judge did not abuse his discretion by denying the motion and by directing Bennett to look to the Federal Rules of Civil Procedure for the proper manner of conducting discovery.  *See Burger King Corp.*, 169 F.3d at 1315.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the record and drawing all reasonable factual inferences in a light most favorable to the non-moving party.  *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005).  Summary judgment is properly granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.*

The Federal Rules of Civil Procedure state that a party asserting that a fact is genuinely disputed must cite to specific materials in the record; failure to do so allows the district court to consider the fact as undisputed for purposes of the

5

motion for summary judgment. Fed.R.Civ.P. 56(c)(1)(A), (e)(2). In a similar way, Northern District of Georgia Local Rule 56.1(B) states (in pertinent part) that a district court will deem the movant's statement of material facts as admitted unless the non-movant's response "contain[s] individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts," and "(i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)." N.D. Ga. L.R. 56.1(B)(2)a.(1), (2). A district court's application of a local rule is reviewed for an abuse of discretion, giving "great deference to a district court's interpretation of its local rules." *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008) (quotation omitted).

In this case, defendants submitted a "Statement of Material Facts as to Which There is No Genuine Issue to be Tried" and some supporting affidavits. Because Bennett failed to respond to defendants' Statement of Material Facts as required by Local Rule 56.1(B), the district court deemed the facts undisputed.

We need not decide particularly whether the district court abused its discretion in applying Local Rule 56.1(B), because -- irrespective of Bennett's technical compliance with the Rule -- Bennett's statements, such as, his "estimate" (a form of "belief") that his cell was "in the 50's," are insufficient to raise a genuine issue of material fact. *See Pace v. Capobianco*, 283 F.3d 1275, 1278-79

6

(11th Cir. 2002) (explaining that statements based, even in part, "upon information and belief" -- instead of only personal knowledge -- do not create a genuine issue of fact sufficient to defeat summary judgment).   So, even when we accept the "facts" properly asserted by Bennett, Bennett has failed altogether to show that the defendants were unentitled to summary judgment on qualified immunity grounds.

## III.

For government officials acting within the scope of their discretionary authority, "[q]ualified immunity offers complete protection . . . if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation omitted).   Once the defendant establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that the qualified immunity defense does not apply.  *Holloman v. Harland*, 370 F.3d 1252, 1267 (11th Cir. 2004).   The plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).   Courts

7

may address these elements in either order and may have no need to address both. *Id.*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  The Eighth Amendment's prohibition on conditions of confinement that amount to cruel and unusual punishment also applies to pre-trial detainees through the Fourteenth Amendment's due process clause.  *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

Prison officials must "provide humane conditions of confinement," including "adequate food, clothing, shelter, and medical care."  *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S.Ct.1970, 1976-77, 128 L.E.2d 811 (1994). But it is a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment."  *Id.* at 828, 114 S.Ct. at 1974.  The deliberate-indifference test has two elements, consisting of an objective and a subjective component.  *Id.* at 834, 114 S.Ct. at 1977.

To satisfy the objective, "substantial risk of serious harm" component, a plaintiff "must show a deprivation that is, 'objectively, sufficiently serious,' which means that the defendants' actions resulted in the denial of the minimal civilized measure of life's necessities."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).  "The challenged condition must be 'extreme'": the prisoner must show that

8

"society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). In evaluating an Eighth Amendment claim, we consider both the "severity" and the "duration" of the prisoner's exposure to extreme temperatures. *Id*. at 1295. Merely showing that prison conditions are uncomfortable is not enough. *Id*. at 1289.

For the subjective component, the prison official must (1) have subjective knowledge of the risk of serious harm, and (2) nevertheless fail to respond reasonably to the risk. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. Subjective knowledge on the part of the prison official requires that the official was aware of the facts "from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official actually drew that inference. *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). A prison official must have a sufficiently culpable state of mind to be deliberately indifferent. *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "[T]he evidence must demonstrate that with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (alteration and quotation omitted). Mistakes and even negligence on the part of prison officials are not enough for a constitutional violation. *Crosby*, 379 F.3d at 1289.

9

Bennett has failed to demonstrate an objective substantial risk of serious harm.  While we accept that Bennett felt uncomfortably cold, he was required to remain nude for a one-time period of approximately 10.5 hours and did not go without clothing or bed linens overnight.  And nothing in the record shows Bennett reported medical problems as a result of the jail conditions he alleges.  This case is not one in which ice formed inside the cell.  *Cf. Dixon v. Godinez*, 114 F.3d 640 (7th Cir. 1997) (prison officials were unentitled to summary judgment when they submitted no evidence rebutting the inmate's allegation that ice formed regularly on his cell walls); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing summary judgment in favor of prison officials where the inmate alleged that, for three months, he was exposed temperatures so cold that ice formed in the toilet bowl of his cell).  Given the limited duration of Bennett's exposure to cool temperatures and the modest severity of those temperatures (even accepting Bennett's "estimate" that the temperature was "in the 50's"), the conditions were not so extreme to reach the level of an Eighth Amendment violation.  *Cf. Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (before the Supreme Court developed its current Eighth Amendment analysis, reversing the district court's grant of summary judgment in favor of prison officials where -- for 16 days -- a prisoner was denied clothing except undershorts, confined to a cell with temperatures as

low as 60 degrees, and required to sleep on a plastic-covered mattress without bedding).

Even if Bennett's allegations of cold were enough to constitute clearly a substantial risk of serious harm (causing him just some discomfort would not be enough), Bennett has also failed to proffer evidence satisfying the subjective component of the deliberate indifference test.  He presented no evidence that he notified jail officials specifically that he was excessively cold; his complaints were about not having clothes or about "the situation" generally.  He has failed to establish that jail officials were actually aware of the facts from which the inference of a substantial risk of serious harm could be drawn or -- perhaps, more important -- that they actually drew that inference.  *See Burnette*, 533 F.3d at 1330.  In addition, the undisputed evidence shows that defendant jail officials believed that Bennett needed the scabies treatment and that the treatment required him to be naked.  Jail officials have also sworn that the temperature of the jail was "normal" and not unusually cold, which further cuts against the notion that they drew an inference of serious risk to inmates due to cold injuries.  Thus, Bennett failed to establish that jail officials acted with deliberate indifference and violated the Constitution.  Besides, the individual jail officials were entitled to qualified immunity on Bennett's deliberate indifference claim, given the lack of clear preexisting law obviously on point, in the circumstances.

11

IV.

The First Amendment protects an individual's freedom of speech and his or her right to petition the government for redress. U.S. Const. amend. I. To plead a retaliation claim under section 1983, the plaintiff must allege (1) constitutionally protected speech, (2) an adverse effect on the protected speech, and (3) a causal connection. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). An inmate raises a First Amendment claim of retaliation if he shows that the prison official disciplined him for filing a lawsuit concerning the conditions of his imprisonment. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). We have held that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254 (quotation omitted). To establish a causal connection, the plaintiff must establish that the defendant was subjectively motivated by the plaintiff's protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

The district court properly granted summary judgment to Captain Lynch on the basis that he was entitled to qualified immunity. Nothing sufficiently evidences that Captain Lynch was subjectively motivated to discipline Bennett for contacting the press to report on jail conditions and for threatening to sue. Instead,

12

Captain Lynch's comments to the press came in direct response to repeated press inquiries for comment on Bennett's complaint. No facts in the record show that Lynch -- who did not direct the newspaper on what to publish -- was motivated by anything other than an attempt to defend the jail's acts and to avoid or to minimize negative press for the jail.

In addition, nothing evidences that Captain Lynch's comments to the newspaper in fact caused the attack on Bennett. That Bennett was attacked several days after Captain Lynch's comments were published does not, by itself, demonstrate a sufficient causal link between the two events. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) (explaining that "proving a temporal relationship between [two events] does not establish a causal relationship."). And we (passing over the hearsay evidence problems) cannot consider Bennett's unsworn statement -- even if we construed it to assert that his attackers told him that Captain Lynch's published comments were the reason for the attack -- in determining whether summary judgment was appropriate. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials."). By the way, Bennett does not assert

13

that his willingness to testify was a close secret known only to Captain Lynch before the newspaper publication.

Accordingly, the district court properly granted summary judgment to Captain Lynch.

**AFFIRMED.**