399 So.2d 753 (1981)
Brenda LEBLANC and Wilbert Leblanc, Plaintiffs-Appellants,
v.
K-MART APPAREL FASHIONS CORPORATION, Defendant-Appellee.
No. 8183.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
*754 Simmons & Nelson, Otha Curtis Nelson, Baton Rouge, for plaintiffs-appellants.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Bernard H. McLaughlin, Lake Charles, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX, and LABORDE, JJ.
DOMENGEAUX, Judge.
Brenda Leblanc sued K-Mart for personal injuries incurred when an allegedly defective door closed onto her left great toe. A twelve member jury returned a verdict in K-Mart's favor. From the trial court judgment adopting the jury's verdict plaintiff has appealed.
Plaintiff contends (A) that the jury manifestly erred in concluding that plaintiff failed to prove her case by a preponderance of the evidence, and (B) that the trial court committed manifest error when the judge: (1) asked questions of a witness in the jury's presence; (2) denied plaintiff's motion for a new trial after plaintiff discovered one of the jurors worked for the Louisiana Department of Employment Security; and (3) refused to allow plaintiff to subpoena the former jurors to appear and testify at the hearing of plaintiff's motion for a new trial. For the following reasons we affirm.

THE FACTS
On Friday, June 23, 1978, at 8:15 P.M., plaintiff, plaintiff's two daughters, ages 2 and 3, plaintiff's neighbor Theresa Mitchell, and Mrs. Mitchell's two children, Larry, age 1, and Tessie Pitre, age 7, traveled to the K-Mart shopping store in Lake Charles. At approximately 8:50 P.M., ten minutes before closing time, the group prepared to leave the store with plaintiff leading the way. One of her daughters was walking by her right side and one was riding in the shopping cart plaintiff was pushing. A very short distance behind plaintiff, Tessie was pushing a cart in which her little brother was sitting. Tessie's mother was still at the checkout counter and did not observe the incident which was about to occur.
Plaintiff pushed the cart ahead of her through an open set of double doors.[1] After plaintiff crossed the threshold, she heard Tessie shout that her cart was tipping over. Plaintiff released her own basket, quickly turned around, and caught Tessie's basket before it could fall over. Tessie's basket was near the left door and was falling towards the left door when plaintiff stopped its fall.
Immediately after her heroic effort, plaintiff noticed that the left door was closed and that her left great toe was bleeding. It was her belief that the left door had somehow become disengaged from its open position and had slammed upon her toe, injuring the toenail. Plaintiff sued on the basis that the door was defective. K-Mart has denied that the door or any of its parts was defective in any way.

THE EVIDENCE
At the trial, there was no eyewitness who could resolve the issue in favor of either party. Theresa Mitchell testified that she did not witness the incident. All she knew was what plaintiff told her. Plaintiff testified that she did not think that she touched *755 the door, but no other witness could corroborate her version of the incident. Thus, the only evidence supporting plaintiff's claim that the door closed of its own volition onto her big toe was her own testimony to that effect.
In its defense of plaintiff's claim, K-Mart called as witnesses Gerald Dunbar, the assistant manager of this K-Mart store at the time of the accident, Vince LeJeune, the store's director of security and safety, and Raoul Fernandez, who qualified as an expert in the repair, construction, maintenance, and operation of glass safety doors similar to those at the K-Mart store.
Mr. Dunbar testified that periodic safety inspections are performed at the store. Operational efficiency reports, which include specific inspections of the doors and entranceway, are filed on a weekly basis. He further testified that there had never been an injury involving the doors and that there were no repairs done on the doors during the month of June, 1978, nor for several months before or after June of 1978.
Mr. LeJeune testified that he performed the weekly safety inspection of the doors and filled out the operational efficiency reports. In fact, the doors were specifically checked on Friday, June 23, 1978, the day of the accident, because that was the day that the operational efficiency report was filled out for that week. Additionally, he testified that whenever any problems are discovered with the doors, repairs are immediately performed. However, K-Mart experienced no problems with the doors during the entire month of June. In addition to the weekly reports, Mr. LeJeune testified that he would check the doors on a daily basis whenever he was nearby.
Mr. LeJeune also testified that the doors at K-Mart open and shut very slowly because they have a governing mechanism which controls the speed at which the doors open and shut for the safety of the customers. It takes a substantial shove to close a door if it has been locked open, and a door which has been locked open will not shut unless it is disturbed. Finally, Mr. LeJeune personally inspected the K-Mart store records from 1965 (when the store was constructed) through 1980, and could not find a single incident where the doors had injured anyone.
Mr. Fernandez, in addition to qualifying as an expert, testified that he had been with Allied Glass of Lake Charles for thirty years. Allied Glass, according to Mr. Dunbar, K-Mart's assistant manager, was the company which periodically inspects the doors of K-Mart and performs maintenance upon them. Mr. Fernandez corroborated Mr. LeJeune's testimony that the door mechanism has a governor which allows the door to close slowly. If the door is locked open it will shut only if it is pushed or otherwise disturbed. The doors at K-Mart will close if they are struck with a buggy; however, they will close slowly. Also, a small child can push a door and unlock it so that it will close slowly. Mr. Fernandez opined that the doors at the K-Mart store are not unsafe and that they were safe for the general public. He also commented that this type of door does not present an unreasonable risk of harm to the general public and that, in fact, this type of door may be found "all over town".

ARTICLE 2317 LIABILITY
The law applicable to the facts in this case is contained in La.C.C. Art. 2317, which provides, in pertinent part:
"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody ...."
Beginning with Loescher v. Parr, 324 So.2d 441 (La.1975), our courts have held that a plaintiff who seeks to recover under Article 2317 must prove: (1) that the thing which caused the damage was in the care or custody of the defendant; (2) that the thing had a vice or defect (i. e., it occasioned an unreasonable risk of injury to another); and (3) that his injury was caused by the defect. Jones v. City of Baton RougeParish of East Baton Rouge, 388 So.2d 737 (La.1980); Broussard v. Pennsylvania *756 Millers Mutual Insurance Company, 398 So.2d 205 (La.App. 3rd Cir. 1981).
The trial court explained these legal principles during the course of instructing the jury. Neither party objected to any of the charges.

THE JURY'S VERDICT
We find no merit in plaintiff's contention that the jury committed manifest error by finding in K-Mart's favor. The evidence in plaintiff's favor was certainly not overwhelming and the jury could easily have found in favor of K-Mart, which it did.
Much evidence was adduced by K-Mart tending to establish that the door was not defective. None of this evidence was impeached by plaintiff or contradicted by any of plaintiff's evidence, except plaintiff's own testimony. Based on K-Mart's evidence, the jury could have concluded, and probably did conclude, that the door was not defective; that instead, either the plaintiff, one of her daughters, or the basket which Tessie was pushing disturbed the door, causing it to close on plaintiff's toe. Such a conclusion would not be erroneous, especially since no one corroborated plaintiff's story, and plaintiff herself was not certain that she did not disturb the door. Indeed, since no one, including the plaintiff, witnessed the incident, it is entirely conceivable that plaintiff's toe was injured by something other than the K-Mart door.
Since plaintiff failed to establish by a preponderance of the evidence that the door was defective, or that her injury was caused by the door, she is not entitled to recover under Art. 2317.

DID THE TRIAL COURT ERR?
1. Asking questions of the witness in the jury's presence.
During the course of the trial, plaintiff testified that she drew unemployment prior to the June 23, 1978 accident. Regarding her receipt of unemployment compensation, plaintiff and her attorney engaged in the following dialogue near the end of plaintiff's presentation of evidence:
"BY MR. NELSON:
Q. Mrs. LeBlanc, after Dr. Kopp performed surgery on August 2, 1978, were you able to return to work?
A. No, not right then.
Q. Were you still drawing unemployment benefits on August 2, 1978?
A. Yes, I was.
Q. Did you have to fill out the report as to whether or not you were able to return to work?
A. You mean at the employment office?
Q. Do you have to fill out a form every week and mail it in to the unemployment office?
A. Oh, yeah, you do.
Q. When did your unemployment benefits run out?
A. I believe in October, the latter part."

* * * * * *
After counsel for both parties had finished questioning the plaintiff, the court questioned her as follows:
"BY THE COURT: Do I understand correctly that you were drawing unemployment compensation at the time you were injured?
BY THE WITNESS: Yes, I was.
BY THE COURT: And you continued to draw it until it ran out in October?
BY THE WITNESS: Yes.
BY THE COURT: And did you certify each week while you were disableddid you sign a certificate and send it to the Department of Employment Security that you were able and available for work?
BY THE WITNESS: Yes, I did.
BY THE COURT: Thank you. You may step down. (Witness excused)"
Plaintiff claims the court committed manifest error by asking plaintiff questions in the presence of the jury. Plaintiff cites no authority for this position.
A trial judge should avoid commenting on the evidence. Kolmaister v. Connecticut General Life Insurance Company, 370 So.2d 630 (La.App. 4th Cir. 1979), writ *757 denied 373 So.2d 531 (La.1979); Lauro v. Travelers Insurance Company, 261 So.2d 261 (La.App. 4th Cir. 1972), writ denied 262 La. 188, 262 So.2d 787 (1972). However, comments by the trial judge which do not prejudice the jury are not improper and do not constitute a ground for reversal. Britt v. Travelers Indemnity Company, 205 So.2d 880 (La.App. 4th Cir. 1968); Gryder v. Travelers Insurance Company, 193 So.2d 532 (La.App. 1st Cir. 1966).
In the instant case the trial judge's questioning of the plaintiff was neither improper nor prejudicial. Considering the evidence as a whole, we believe the judge's questioning of plaintiff had a negligible impact upon the jury's verdict. Even if we disregard totally all testimony of plaintiff's receipt of unemployment benefits, the remaining evidence preponderates heavily in K-Mart's favor. In fact, only plaintiff's own testimony supports her version of the accident, and even she could not unequivocally state that she did not disturb the open door.
Nevertheless, if we assume, arguendo, that the court did err by questioning the plaintiff,[2] the error was harmless since the responses elicited by the judge's questions had only moments earlier been elicited by questions from plaintiff's own counsel. Thus, any effect plaintiff's answers had upon the jury had already been created by the time the judge questioned her. Therefore, plaintiff is not entitled to reversal on this basis.
2. Denial of plaintiff's motion for a new trial.
Two days after the jury rendered its verdict, one of the jurors called the district judge to inform him that he (the juror) had notified his superior at the Louisiana Department of Employment Security (LDES), of a possible fraud perpetrated upon the Department by the plaintiff. The judge notified plaintiff's counsel who then moved for a new trial on the basis that this juror was biased against plaintiff and unfairly influenced the other eleven jurors when they were considering a verdict.
La.C.C.P. Art. 1814 provides:
"A new trial shall be granted if it be proved that the jury was bribed or has behaved improperly so that impartial justice has not been done."
The fact that one of the jurors worked for the Louisiana Department of Employment Security and felt, after hearing plaintiff testify, that plaintiff may have perpetrated a fraud upon the Department, by certifying that she was able and ready to work when, in fact, she was disabled by the injury to her toe, does not indicate that the jury behaved improperly or that impartial justice has not been done. The juror's employment with LDES in no way suggests that he was prejudiced against plaintiff just because she collected unemployment, and plaintiff has offered no evidence, apart from the juror's post-trial actions (which have not been shown to be illegal or otherwise improper), that the jury was guilty of misconduct. Therefore, the trial court correctly decided that plaintiff was not for this reason entitled to a new trial.
3. Refusal to allow plaintiff to subpoena jurors.
Following the disclosure that one of the jurors notified his superior at LDES of a possible fraud perpetrated by the plaintiff, plaintiff's counsel moved for a new trial and attempted to subpoena the jurors to appear and testify at the hearing on plaintiff's motion for a new trial. The court prohibited this maneuver on the ground that jurors may not be used to impeach their own verdict and may not be questioned at all as to what transpired during the process of their deliberations. This ruling was correct. Lachney v. Jones, 373 So.2d 595 (La.App. 3rd Cir. 1979), writ denied 376 So.2d 959 (La.1979); Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir. 1977), writ denied 354 So.2d 1050 (La.1978); Dieudonne v. Guidry, *758 336 So.2d 990 (La.App. 3rd Cir. 1976), writ denied 339 So.2d 853 (La.1976).

DECREE
Since we find that no error was committed by either the jury or the trial court, the judgment of the district court is affirmed at plaintiff's cost.
AFFIRMED.
NOTES
[1] There were three sets of double doorssix doors in alland all were open to allow the free passage of customers leaving the store and to allow store employees to push shopping carts into the store from the parking lot. The doors plaintiff was walking through were opened to the outside.
[2] We do not decide here whether a trial judge's questioning of a witness in a jury case amounts to commenting upon the evidence. Depending on the circumstances, a question might constitute a prejudicial comment, but those circumstances do not exist here.