428 So.2d 1040 (1983)
Jackson S. HARRIS, Sr., as Curator for the Interdict, Pearl Daniels Dunbar and Paul Williams
v.
ATLANTA STOVE WORKS, INC., and Birmingham Stove Company, et al.
No. 82 CA 0384.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
Rehearing Denied April 6, 1983.
*1041 Gerald L. Walter, Jr., Richard F. Zimmerman, Jr., Kantrow, Spaht, Weaver & Walter, Baton Rouge, for defendant-appellant, Atlanta Stove Works, Inc; Birmingham Stove and Range Co.; and Hartford Acc. and Ind. Co.
James B. Doyle, Doyle, Simmons & Jantz, John B. Noland, Breazeale, Sachse & Wilson, Baton Rouge, for defendant-appellee, Louisiana Appliances, Inc., and the Fidelity and Cas. Co. of New York.
*1042 Before PONDER, SAVOIE and CRAIN, JJ.
SAVOIE, Judge.
This is a products liability case resulting from carbon monoxide poisoning allegedly sustained by Pearl Dunbar and Paul Williams.[1] After a jury trial, judgment was rendered in favor of Pearl Dunbar and Paul Williams and against Atlanta Stove Works, Inc. and Birmingham Stove Company, manufacturers of the product in question, hereinafter referred to simply as "Atlanta". Louisiana Appliances, Inc., vendor of the product, a space heater, had judgment rendered in its favor.
Atlanta appeals, asserting that the jury erred in four respects: (1) in dismissing Louisiana Appliances, Inc. if its representative instructed Pearl Dunbar to use the heater without a vent, and/or failed to supply the instructions for the heater's use, (2) in failing to apply the doctrines of "victim fault", contributory negligence, assumption of risk, and improper use and/or abnormal use of the product, (3) in concluding that Paul Williams proved any injury sustained as a result of the alleged defect in the heater, and (4) in awarding an excessive amount for damages. Atlanta also alleges that the trial court erred in commenting on the evidence, allowing improper testimony, and failing to give defendant's request for jury instruction on victim fault. Plaintiffs answered, requesting an increase in both awards.
We affirm.
On December 18,1978, Pearl Dunbar, accompanied by Reverend George Provost, went to the defendant-vendor, Louisiana Appliances, Inc., to purchase a space heater. One of the store's owners, Clarence Melsheimer, sold Pearl Dunbar a model BV-30A thermolaire space heater. A discussion ensued relative to the venting of the purchased heater. All parties thereto agree that Mr. Melsheimer stated that the heater required venting. However, a dispute exists as to whether Mr. Melsheimer further indicated that a can over the vent pipe would be sufficient for venting purposes.[2]
A heater of the type purchased by Pearl Dunbar was delivered by Louisiana Appliances, Inc. to her home. Subsequently, it was connected to a pre-existent fuel line by Reverend Provost.
On January 12, 1979, Pearl Dunbar and another woman were discovered in an unconscious state in her home due to the emission of carbon monoxide poisoning from the heater. A third woman was found, dead. Thereafter, Pearl Dunbar remained in a vegetable-like state. Paul Williams, a neighbor, who had visited Pearl Dunbar's home a few days prior to the accident, also alleges that he suffered from the carbon monoxide emissions.
Under Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (La.1971), rehearing denied, August 12, 1971, the plaintiff in a products liability suit must only prove that: (1) the product was defective, i.e., unreasonably dangerous to normal use, (2) the product's defect caused the injury, (3) the injury might reasonably have been anticipated by the manufacturer, and (4) the product was in normal use at the time the injury occurred. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980), rehearing denied, September 12, 1980.
The evidence substantiates that the first three elements of the test are met. As to the first element, all experts testified that the heater's baffle was positioned defectively. Further, Atlanta admits in brief that the heater's malpositioned baffle created a risk of injury to the user. Secondly, the record reflects that the defective positioning of the baffle caused excessive and dangerous amounts of carbon monoxide to *1043 be emitted into the Dunbar home. According to uncontradicted medical testimony, Pearl Dunbar's injuries resulted from these emissions.
As to the third requirement, Atlanta is presumed to have known that this heater emitted excessive and dangerous amounts of carbon monoxide.[3] Therefore, Atlanta should have anticipated injuries of the type sustained by Pearl Dunbar.
The remaining issue of whether the product was in normal use at the time of the injury will be addressed in Assignment of Error No. 2.

ASSIGNMENT OF ERROR NO. 1
Atlanta first asserts that the jury erred in dismissing Louisiana Appliances, Inc., the vendor, if the vendor: (a) informed Pearl Dunbar that she need not vent the heater, and/or (b) failed to supply her with installation instructions. This argument is based on the false premise that the vendor was under some obligation to properly instruct Pearl Dunbar and that failure to fulfill this obligation constituted a cause-in-fact of Pearl Dunbar's injuries.
A non-manufacturer seller of a defective product is responsible for damages in tort, only if he knew or should have known that the product sold was defective, and failed to declare it. L.S.A.-C.C. 2545; and Hudgens v. Interstate Battery Systems of America, Inc., 393 So.2d 940 (La.App. 3rd Cir.1981). Having previously determined that the heater was defective, we now address the question of the vendor's knowledge of the defect.
The record is devoid of any evidence to indicate that the vendor had actual knowledge of the defect. As to the question of whether the vendor should have known of the defect, the law is that a vendor is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects. Ratliff v. Porter Cable Company of New York, 210 F.Supp. 957 (E.D.La.1962). Furthermore, the record reflects that absent a complete dismantling of the heater, the vendor could not have known that the product was defective. There is no testimony such dismantling was attempted or accomplished. Due to the absence of the requisite knowledge by the vendor, we conclude that the vendor is not liable.
Neither can we conclude that the failure to supply proper instructions was a cause-in-fact of the accident. The record clearly reflects that absent the manufacturing defect, the heater would have posed no threat of harm to Pearl Dunbar even if operated without a vent. Thus, we find Atlanta's first assignment of error without merit.

ASSIGNMENT OF ERROR NO. 2
Secondly, Atlanta asserts that if Louisiana Appliances, Inc. did inform Pearl Dunbar that venting was required on the heater and/or she disregarded the instruction booklet sent with and the metal plate affixed to the heater, then the jury erred in failing to apply the doctrines of victim fault, contributory negligence, assumption of risk, improper use and/or abnormal use of the product. This argument erroneously presupposes that the vendor's information would be sufficient to put Pearl Dunbar on notice of the heater's inherent defects; that Pearl Dunbar received the installation instruction booklet; and that the metal plate on the heater provided sufficient warning. However, we will address each defense in the order presented.
First, Atlanta contends Pearl Dunbar's recovery should be barred due to her own fault. Victim fault in product liability cases is usually in the form of assumption of risk, that is, the voluntary and unreasonable use of the product with the full knowledge and appreciation of its defect and the danger involved. Verrett v. Cameron Telephone Company, 417 So.2d 1319 (La.App. 3rd Cir.1982); Wilson v. Voss, 361 So.2d 312 *1044 (La.App. 1st Cir.1978); and see also Rodrigue v. Dixilyn Corp., 620 F.2d 537 (5th Cir.1980), per Tate, J.
In the instant case, the expert testimony substantiates that, absent a dismantling of the heater, one would never know that the baffle was defectively malpositioned. Based thereon, we conclude that Pearl Dunbar did not know of and could not appreciate the defect or the dangers involved in the heater's use. Accordingly, she could not have knowingly assumed such risk and is, therefore, free from victim fault.
Next, Atlanta argues that Pearl Dunbar was contributorily negligent and, consequently, is barred from recovery. However, the acts which Atlanta contends constitute contributory negligence are Pearl Dunbar's misuse and/or abnormal use of the heater which was also alleged as a defense. As such, we will address these as one defense.
Atlanta asserts that a misuse of the product was evidenced by Pearl Dunbar's failure to heed Mr. Melsheimer's warnings, heed the gold instruction plate on the heater, follow the installation instruction booklet, and/or heed the metal tag's admonition to vent the heater. Mr. Melsheimer testified that he was sure that Pearl Dunbar did not understand what venting meant. Therefore, whether he gave an admonition is of no moment. Further, the record reflects that the gold instruction plate gave no notice that venting was required. There is testimony that the instruction booklet contained language sufficient to constitute a proper warning. However, the record indicates no such instruction booklet was ever received by Pearl Dunbar. Thus, only the metal tag affixed to the heater could have given any indication to Pearl Dunbar that venting might be required.
A manufacturer has a duty to give adequate warnings of unreasonable danger involved in the normal use of its product, where the manufacturer knows or should have known of such danger. Chappuis v. Sears Roebuck & Company, 358 So.2d 926 (La.1978), writ denied, 366 So.2d 576 (La.1979). Here, Atlanta was presumed to know of the manufacturing defect, yet failed to give any express warning of the known danger resulting therefrom. Although the identification tag states "APPLIANCES MUST BE CONNECTED TO FLUE," this instruction fails to warn of the danger of carbon monoxide poisoning which could result from the heater's improper use. Cobb v. Insured Lloyds, 387 So.2d 13 (La. App. 3rd Cir.1980). Furthermore, the record reflects that absent the manufacturing defect, the heater, as installed in the present case, would have posed no threat of harm to Pearl Dunbar. Accordingly, we conclude that the language of the metal tag is not in the nature of a warning; and, as such, would not deter a reasonable person from using the heater in the same manner as Pearl Dunbar.
In light of the above, we find that Atlanta failed to prove any misuse of the product by Pearl Dunbar.

ASSIGNMENT OF ERROR NO. 3
On January 12, 1979, Paul Williams was admitted to the hospital complaining of discomfort and chest pains. Dr. Blunck, his treating physician and a general practitioner, made a routine examination, concluding that Paul Williams suffered from a myocardial infarction subclinical. Williams was given cardiac support and the necessary medication to permit his heart to heal. Dr. Blunck, after learning of Pearl Dunbar's accident and the surrounding facts, noted on Paul Williams' medical records that his condition was aggravated by carbon monoxide exposure. However, at trial, Dr. Blunck specifically testified that Williams' blood gas test evidenced no carbon monoxide intoxication.
Dr. Freeman, one of Pearl Dunbar's physicians and a teacher in post-graduate pathology and toxicology in Clinical Laboratory Science, was also questioned on Paul Williams' condition. He explained that carbon monoxide poisoning, a toxic, has the effect of stopping the body's utilization of oxygen, resulting in asphyxiation. Noting that one of the diagnoses on Williams' hospital admission record was asphyxiation, he opined that this diagnosis was consistent *1045 with the effects of carbon monoxide poisoning. When questioned as to whether carbon monoxide poisoning could be a precipitating cause of myocardial infarction, Dr. Freeman said, "Certainly." He stated that the symptoms produced with carbon monoxide poisoning are the same as with any nondescript illness"a little headache, a little dizziness, a little weakness, a little shortness of breath, then you begin to get aggravating symptomatology; light congestion of the chest and more fluid than necessary..." Further, he stated that without suspecting and specifically testing for this type of poisoning, one would probably never make the appropriate diagnosis.
The record reflects that Paul Williams was admitted to the hospital at 10:40 P.M. on January 12, 1979, and that, previous thereto, he had visited in the home of Pearl Dunbar. In the early afternoon of the following day, Pearl Dunbar was rushed to the emergency room of the hospital suffering from carbon monoxide poisoning.
In light of the above, we cannot say the jury abused its discretion in rendering a verdict in favor of Paul Williams.

ASSIGNMENT OF ERROR NO. 4
Next, Atlanta contends that the damages awarded to plaintiffs were excessive. It cites several cases which give substantially lower awards than that given by the trial court herein. Contrarily, plaintiff, answering Atlanta's appeal, asks for an increase in the award given and cites several cases for their position.
The trial court has much discretion in fixing awards and will not be overturned unless there is a clear abuse of that discretion. L.S.A.-C.C. art. 1934, subd. 3; and Reck v. Stevens, 373 So.2d 498 (La.1979). The trial court awarded $800,000 for Pearl Dunbar's injuries and $2,750 for Paul Williams' injuries. We find these awards both justified and adequate compensation for the injuries sustained.[4] As such, both awards are affirmed.

ASSIGNMENT OF ERROR NO. 5
Atlanta also contends that the trial judge's comments on certain facts unduly prejudiced it. Although trial judges must endeavor to avoid commenting on the evidence, Leblanc v. K-Mart Apparel Fashions Corp., 399 So.2d 753 (La.App. 3rd Cir.1981); Kolmaister v. Connecticut General Life Insurance Company, 370 So.2d 630 (La.App. 4th Cir.1979), writ denied, 373 So.2d 531 (La.1979); and Lauro v. Travelers Insurance Company, 261 So.2d 261 (La.App. 4th Cir.1972), comments which do not prejudice the jury do not constitute reversible error. Leblanc, supra.
The record reflects that at least three times during this trial, the trial judge instructed the jury to disregard any comments either he or the attorneys made concerning the facts. At each of these times, he charged the jury that only the testimony of the witnesses was to be considered in arriving at their decision. We find these charges to be sufficient. Therefore, Atlanta's contention is without merit.
Atlanta next asserts that the admission of both expert and non-expert opinion testimony is error. It is well settled that if facts are stated upon which one's opinions are based, an expert's opinion is admissible. Brabo v. Martin, 5 La. 275 (1834); Dussouy v. Fireman's Fund Insurance Company, 346 So.2d 1122 (La.App. 4th Cir.1977); and Dixie Pipeline Company v. Barry, 227 So. 23 1 (La.App. 3rd Cir.1969), writ refused, 225 La. 145, 229 So.2d 731 (La.1970). While opinion testimony of lay witnesses is generally excluded, where no harm or prejudice, sufficient to mandate a reversal, is shown by its admission, the trial court's discretion to allow such testimony will not be overturned. Scheib v. William-McWilliams, Co., Inc., 628 F.2d 509 (5th *1046 Cir.1980); and Greene v. Wright, 365 So.2d 551 (La.App. 1st Cir.1978). Finding no clear abuse of discretion or prejudicial error, we find Atlanta's contention is without merit.
Finally, Atlanta asserts that the trial court failed to give requested jury instructions on victim fault. In a jury trial, the judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the pleadings and facts in each particular case. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Miller v. Fogleman Truck Lines, Inc., 398 So.2d 634 (La.App. 3rd Cir. 1981), writ denied, 401 So.2d 358 (La.1981); and Beck v. Lovell, 361 So.2d 245 (La.App. 1st Cir.1978), writ denied, 362 So.2d 802 (La.1978).
In the instant case, the trial judge made specific reference to the fault of "others" and the fault of third persons or both. While the specific words "victim fault" were not used, we find the jury instructions taken as a whole were adequate to charge the jury on this defense.
For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects. All costs are to be borne by defendant-appellant, Atlanta Stove Works, Inc. and Birmingham Stove Company.
AFFIRMED.
NOTES
[1] Due to Pearl Dunbar's incapacity to act in her own behalf as a result of the alleged carbon monoxide poisoning, Jackson S. Harris, Sr., her curator, brought this action. Pearl Dunbar died on September 24, 1982 and Johnny Williams, executor of the Estate of Pearl Dunbar, was substituted as Party Plaintiff.
[2] The record reflects that the heater was used with a can placed over the vent pipe.
[3] It is well settled in Louisiana that a manufacturer is presumed to know of any defects in its product. Rey v. Cuccia, 298 So.2d 840 (La. 1974), rehearing denied, August 30, 1974; and Leonard v. Daigle Pontiac-Buick-GMC, Inc., 413 So.2d 577 (La.App. 1st Cir.1982).
[4] Pearl Dunbar, 65 years old at the time of the accident, died approximately ½ years after the accident. Testimony reflects that the average life expectancy of a 65 year old black female was between eleven and twelve years. The record also reflects that the defendants introduced evidence of Pearl Dunbar's shortened life expectancy as a result of the accident. Such evidence having been placed in the record, we can only assume that the jury considered this as one factor in arriving at its general damage award.