542 So.2d 128 (1989)
Lee Ray NELTON, Sr. Individually and as Natural Tutor of Lee Ray Nelton, Jr.
v.
The ASTRO-LOUNGER MANUFACTURING COMPANY, INC. and Fraenkel Wholesale Furniture Company.
No. 88 CA 0230.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
*129 Louis St. Martin, Houma, for Lee Ray Nelton, Sr.
Janice Hornot, Baton Rouge, for Fraenkel Wholesale Furniture Co.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
This case is a products liability and negligence action arising out of an accident which occurred on June 23, 1986. Lee Ray Nelton, Jr., the minor son of plaintiff, Lee Ray Nelton, Sr., was severely injured due to an alleged defect in a sofa bed owned by his father. Plaintiff (individually and as tutor for his minor child) filed suit against the following defendants, seeking to recover damages for his son's injuries: the manufacturer of the sofa bed, Astro-Lounger Manufacturing Co., Inc. (hereinafter Astro-Lounger), and its insurers, Travelers Insurance Co. and Interstate Fire and Casualty Co. (excess insurer); the manufacturer of the springs or folding mechanism in the sofa bed, Hoover Group, Inc., and its insurer, National Union Fire Insurance Company;[1] and the distributor of the sofa *130 bed, Fraenkel Wholesale Furniture Co. (hereinafter Fraenkel).
Fraenkel answered the plaintiff's petition and then filed a motion for summary judgment.[2] The trial court granted the motion for summary judgment and dismissed Fraenkel from the suit.[3] From this judgment, plaintiff appeals. Plaintiff assigns as error the trial court's granting of the motion for summary judgment.
In support of its motion for summary judgment, Fraenkel submitted the affidavit of Harvey M. Hoffman.[4] Hoffman was the President of Fraenkel from January, 1985, through the time of his affidavit (July 28, 1987). Hoffman explained that Fraenkel buys furniture from many different manufacturers and then distributes and/or wholesales it "to numerous retail establishments and businesses throughout several southeastern states...." Pertinent parts of the affidavit are as follows:
5. I have carefully reviewed the records of Fraenkel ... kept and maintained in the normal course of business relative to purchases of sofa-beds from... Astro-Lounger.... Fraenkel ... purchased and received sofa-beds from Astro-Lounger ... in 1985. At least two sofa-beds were sold to Discount Furniture in Bourg, Louisiana prior to the accident on which the lawsuit is based. One sofa-bed was sold to Discount Furniture in Bourg, Louisiana, on September 30, 1985, and another was sold to Discount Furniture in Bourg, Louisiana on October 16, 1985. [Plaintiff purchased the sofa bed from Discount Furniture (also known as Mohana's Furniture Barn) on October 24, 1985, according to plaintiff's answers to interrogatories].
6. The sofa-beds purchased from Astro-Lounger..., including the sofa-bed involved in the accident described in the lawsuit, were shipped to Fraenkel ... by Astro-Lounger ... in a cardboard box. The box completely enclosed and encased the sofa-bed and the cardboard box was securely stapled together.
Hoffman went on to state that Fraenkel did not participate in the design, manufacture, testing, inspecting or packaging of the sofa bed described in the lawsuit; that no one from Fraenkel modified the sofa bed; that no one from Fraenkel inspected, examined, tested or evaluated the sofa bed; that no one ever opened "the shipping carton containing the sofa-bed or remove[d] the sofa-bed"; that the sofa bed "remained secure and intact inside its cardboard box during the entire time that it was at the warehouse of Fraenkel"; that to Hoffman's knowledge, there was no defect in the design, manufacture or assembly of the sofa bed when it left Astro-Lounger's premises, nor when it left Fraenkel's warehouse; that after an investigation of Fraenkel's records and personnel, he determined that Fraenkel did not know of any defect in the design, manufacture, or assembly of the sofa bed; that to his knowledge, no one damaged or mishandled the sofa bed while in Fraenkel's possession; that after the sale of the sofa bed to Discount Furniture none of Fraenkel's employees performed any work on the sofa bed; and that Fraenkel was merely a distributor *131 of the sofa bed and never held out to the public that it manufactured the sofa bed or that the sofa bed was its own product.
Finally, Hoffman stated:
14. To my knowledge, prior to the incident on which this lawsuit is based, there have never been any complaints or claims of defects in other sofa-beds manufactured by the Astro-Lounger.... To my knowledge, neither Fraenkel ... nor any or [sic] its employees, agents, officers, directors and/or representatives ever had any knowledge prior to the incident upon which this lawsuit is based that any sofa-bed manufactured by Astro-Lounger..., including the one on which the lawsuit is based, was defective or may have been defective.
On the day of the hearing on the motion for summary judgment plaintiff submitted the affidavit of his attorney, wherein he stated:
[t]hat without further discovery either by deposition or by production of documents, he is unable to marshal specific facts to support his claim against Fraenkel for what is an alleged defect in the sofa bed and for which, given the right set of facts, Fraenkel could, under the law, be held responsible....
Following the hearing, Fraenkel filed the affidavit of the secretary of its attorney wherein she stated that she was responsible for scheduling depositions and taking telephone messages for Fraenkel's attorney. She said that she had never been contacted by the plaintiff's attorney or anyone on his behalf concerning the deposition of a representative of Fraenkel or regarding documents or exhibits belonging to Fraenkel.
Plaintiff then filed the affidavit of Louis Mohana, the owner of Discount Furniture (Mohana's). Mohana said that his store purchased the sofa bed from Fraenkel and sold it to plaintiff. He then stated:
that Fraenkel ... has a showroom in Baton Rouge and has items displayed on the floor with sales assistants; that these assistants will operate the equipment and will open and close equipment; that Fraenkel sales persons [sic] also send around sales and promotional literature which describe [sic] and touts the items; that affiant has been to Baton Rouge to the showroom and has purchased items because of the sales assertions and promotion of the Fraenkel employees; and, that Fraenkel also handles any problems or complaints relative to the subject furniture.
Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966. "The party moving for summary judgment has the burden of showing absence of a genuine issue as to any material fact." Burke v. Occidental Life Insurance Co. of California, 427 So.2d 1165, 1168 (La.1983).
Tort liability for a defective product attaches to a non-manufacturer seller who does not vouch for the product by holding it out as his own or who is not a professional vendor or merchant "only if he knew or should have known that the product sold was defective, and failed to declare it." Harris v. Atlanta Stove Works, Inc., 428 So.2d 1040, 1043 (La.App. 1st Cir.), writ denied, 434 So.2d 1106 (La.1983). (Citations omitted). See also General Accident Insurance Co. of America v. Gillespie Lumber & Supply Co., 527 So.2d 1092 (La.App. 1st Cir.1988); Picolo v. Flex-A-Bed, Inc., 466 So.2d 652 (La.App. 5th Cir.), writ denied, 467 So.2d 1134 (La.1985). Furthermore, a non-manufacturer seller "is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects." Harris, 428 So.2d at 1043. (Citations omitted).
We find that Fraenkel met its burden of proving that there was no genuine issue of material fact. Clearly, according to Hoffman's affidavit, Fraenkel had no part in the manufacture of the sofa bed nor did it hold the sofa bed out as its own. Although at the time of the motion for summary judgment, there were no specific *132 allegations as to how the sofa bed was defective, Hoffman's affidavit establishes that regardless of the nature of the defect, Fraenkel's employees were not aware nor should have been aware of it since the sofa bed received from Astro-Lounger never left the carton in which it was packaged. As Fraenkel is a seller, it was not required to inspect the sofa bed; thus, there is no genuine issue of fact as to whether Fraenkel knew or should have known of any alleged defect in the sofa bed.
The counter-affidavit of Mohana is insufficient to raise a genuine issue of material fact. The facts set forth in the affidavit do not raise an issue as to whether Fraenkel is a manufacturer; the affidavit only establishes that Mohana, owner of a retail furniture store, was able to go to Fraenkel's, view merchandise, and purchase merchandise. The assertion that Fraenkel handles complaints regarding the furniture does not indicate that Fraenkel repairs or alters the furniture in any way.
In memoranda, plaintiff appears to contend that because Fraenkel displayed items in its showroom, a model of Nelton's sofa may have been displayed, and that a Fraenkel salesperson may have operated the sofa bed and thus have been aware of any defect. Yet none of these contentions are supported by Mohana's affidavit which never particularly discusses the sofa bed which allegedly injured Nelton's son or any particular defect in that sofa bed.
Plaintiff contends that Fraenkel is a professional vendor based on the case of Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 752 (La.1987), wherein the Louisiana Supreme Court, in deciding whether a bank which sold a mobile home through a mobile home dealer was a professional vendor, stated that the bank "was not a professional vendor or merchant because it was not in the business of selling mobile homes. The bank only made occasional sales of homes which it was forced to acquire in foreclosures." Rowell, 500 So.2d at 752. Plaintiff argues that because Fraenkel was in the business of selling sofa beds, it is a professional vendor.
We disagree with the plaintiff's analysis. We initially note that when referring to a "professional vendor" in Rowell the supreme court cited Chappuis v. Sears Roebuck and Co., 358 So.2d 926 (La.1978). Rowell, 500 So.2d 752, 753. In Chappuis, the supreme court explained why it classified Sears as a professional vendor:
The responsibility of Sears is the same as that of the manufacturer. First, it held the product out to the public as its own. Penn v. Inferno Manufacturing Corp., 199 So.2d 210 (La.App. 1st Cir. 1967). Second, the size, volume and merchandising practices of Sears, unlike those of Reliable Motors in Spillers v. Montgomery Ward et al., 282 So.2d 546 (La.App. 2d Cir.1973), bring Sears within the class of `professional venders,' [sic] who are presumed to know of the defects in their wares. See Morrow, Warranty of Quality, 14 Tul.L.Rev. 529, 539 (1940). Reliable Motors, Inc. was a relatively small truck retailer. The relationship between a retailer like Sears and its manufacturers on the other hand, with its capabilities for controlling the quality of its merchandise, justifies the imputation to Sears of knowledge of its defects.
Chappuis, 358 So.2d at 930. As can be seen from the language in Chappuis, a professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that the courts are justified in treating the retailer like a manufacturer. We do not believe that the supreme court in Rowell intended to expand the scope of Chappuis to impose manufacturer liability on all retailers who are simply in the business of selling a product. For this reason, we reject plaintiff's contention that Fraenkel is a professional vendor simply because it is in the business of selling sofa beds. Using the criteria set forth in Chappuis, we also find that based on the facts submitted by affidavit, Fraenkel is not a professional vendor. See Picolo, 466 So.2d at 654.
Plaintiff also tries to oppose Fraenkel's motion for summary judgment *133 by relying on LSA-C.C.P. art. 967 and contending that he should have been allowed to take further discovery, particularly regarding the documents Hoffman referred to in his affidavit and as to Hoover.[5] We find this argument without merit.
Plaintiff filed suit on August 8, 1986 (about a month and a half after the accident); defendant filed its motion for summary judgment on August 14, 1987, and it was set for hearing on August 28, 1987. On that date, the hearing was continued. Plaintiff then filed a motion for continuance on September 1, 1987 on the basis that he could not attend the previously set hearing due to a pretrial conference in another case on the same date; in the motion he requested that the hearing be rescheduled on the next available rule day. The hearing was rescheduled to September 10, 1987. At the hearing, the minute entry reflects that the trial judge did allow the plaintiff's attorney to file the affidavit of Mohana at a later date, with time for Fraenkel's attorney to respond.
We find that plaintiff had adequate time to conduct sufficient discovery to oppose Fraenkel's motion for summary judgment. The plaintiff never showed at the hearing that he made any serious requests or attempts prior to the motion for summary judgment to compel discovery from Fraenkel, Hoover, or Astro-Lounger. Furthermore, in the affidavit of plaintiff's attorney, he never specified the nature of the facts he hoped to discover. The plaintiff also never requested a continuance on the motion for summary judgment on the basis that he needed more time for discovery. For these reasons, we feel that the trial court did not err in granting Fraenkel's motion for summary judgment and refusing to grant a continuance. See Fisk v. Mathews, 525 So.2d 223, 226 (La.App. 1st Cir.1988); American Bank & Trust Co. v. Cambre, 486 So.2d 1076, 1078-79 (La.App. 2d Cir.1986).
Based on the above and foregoing reasons, we affirm the judgment of the trial court granting Fraenkel's motion for summary judgment. Costs of this appeal to be paid by the plaintiff.
AFFIRMED.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting.
Plaintiff has alleged a defect in the design of the sofa bed. It is irrelevent that Fraenkel never opened the shipping carton or otherwise inspected the particular sofa bed in question. Inspection of any like model employing the same design would suffice to raise a genuine issue of material fact with regard to whether Fraenkel should have known of the defect. There is evidence in this record that Fraenkel displays the items it sells at a showroom, where salespersons operate this equipment in endeavoring to sell it to prospective purchasers.
It is unclear whether this particular sofa bed was on display and was operated, or whether a similar model with the same folding mechanism was on display and operated. This is a significant question of fact that bears on the issue of whether Fraenkel should have known of the defect. Whether a defect is obvious and apparent is a question of fact. Picolo v. Flex-A-bed, Inc., 466 So.2d 652 (La.App. 5th Cir.), writ denied, 467 So.2d 1134 (1985). The instant case is distinguishable from Picolo because in that case a defective weld in the particular bed in question was not discoverable absent magnification. Likewise, the case before us is distinguishable from Harris v. Atlanta Stove Works, 428 So.2d 1040 (La.App. 1st Cir.1983), because in Harris the defect could not have been discovered absent complete dismantling. 428 So.2d at 1043. Lastly, Rowell v. Carter Mobile Homes, 500 So.2d 748 (La.1987) is *134 completely inapposite because the vendor therein was a bank who had repossessed the allegedly defective mobile home and was found to be only an occasional vendor of such repossessed items.
I respectfully dissent.
NOTES
[1] Plaintiff also named Hartford Accident and Indemnity Co. as a defendant as an insurer of Hoover Group, Inc. Hartford was later dismissed from the lawsuit on a motion for summary judgment on the basis that it did not provide coverage to Hoover for the accident.
[2] Fraenkel also filed third party demands against Astro-Lounger, Hoover, and Travelers.
[3] The trial court rendered and signed its judgment on October 6, 1987. We note that attached to plaintiff's brief are reasons for judgment. While plaintiff did file a request for written reasons for judgment on October 16, 1987, the reasons for judgment attached to the brief were signed and filed on April 20, 1988 and do not appear in the record on appeal. We have not considered these reasons for judgment which are not a part of the record, but only an attachment to plaintiff's brief. See Capital Drilling Co. v. Graves, 496 So.2d 487 (La.App. 1st Cir.1986).
[4] In its motion for summary judgment, Fraenkel also relied on the deposition of Thomas Lynn Davis, a representative of Astro-Lounger; however, this deposition is not part of the record. While Fraenkel's memo in support of its motion for summary judgment and its attorney at the hearing on motion for summary judgment did refer to this deposition, we note that Fraenkel's appellate brief does not. Because the deposition is not of record we have not considered any references to the deposition in reviewing the trial court's decision. See Capital Drilling Co., 496 So.2d at 489.
[5] LSA-C.C.P. art. 967 reads in pertinent part as follows:

If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.