734 So.2d 916 (1999)
Lee COULON and Susan B. Coulon, Individually and on Behalf of Their Minor Child, Grant Michael Coulon
v.
WAL-MART STORES, INC., Roadmaster Industries, Inc. & Brunswick Corporation
No. 98 CA 1141.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
*917 Conrad S.P. Williams, III, Joseph G. Jevic, Houma, for Plaintiffs/Appellees, Lee Coulon and Susan B. Coulon, Individually and on Behalf of their minor child, Grant Michael Coulon.
Thomas Anzelmo, Metairie, for Defendant/Appellant, Wal-Mart Stores, Inc.
Before: CARTER, C.J., SHORTESS, J., and EDWARD A. de la HOUSSAYE,[1] J. Pro Tem.
CARTER, C.J.
This is an appeal from a judgment rendered against appellant, Wal-Mart Stores, Inc. (Wal-Mart), in a personal injury action. The action arises out of a child's fall from a bicycle purchased from Wal-Mart. The child sustained injuries when the left pedal fell off while the child was racing on the bicycle.

BACKGROUND
Wal-Mart sold pre-assembled bicycles at its Houma store location. At one time, the pre-assembled bicycles were assembled by Darryl's Bicycle Service (DBS). Lucius Hebert was an employee of DBS who had assembled and repaired bicycles at Wal-Mart since 1988. In 1992, Hebert met with Dean Legg, the manager of the Houma Wal-Mart, and discussed having Hebert's newly-formed company, Pro Bicycle Services (PBS) take over the assembly and repair work that DBS had been performing at the Houma Wal-Mart. Legg and Hebert reached an agreement that PBS would perform this work. Wal-Mart agreed to pay a fixed dollar amount for each bicycle assembled and an hourly rate for repair work. PBS had its own employees to perform the assembly and repair work, and none of the PBS employees received any benefits from Wal-Mart. The assembly and repair work was performed at the Wal-Mart store in Houma. Once a bicycle was assembled, a Wal-Mart employee would take the bicycle and hang it up on the sales floor rack. Wal-Mart did not disclose to its customers that the bicycles were assembled by PBS or that they were not assembled by Wal-Mart.

FACTUAL AND PROCEDURAL HISTORY
On December 20, 1995, plaintiff, Susan Coulon, purchased a pre-assembled fifteenspeed Roadmaster Ultraterrain bicycle from the Houma Wal-Mart. Mrs. Coulon gave the bicycle to her twelve-year-old son, Grant, as a Christmas present. On February 8, 1996, Grant was racing against some friends on his bicycle when the left pedal fell off the bicycle. As a result, Grant fell off the bicycle and broke his left wrist. He also fractured two of his teeth. Immediately after the accident, Grant was taken to the emergency room at Terrebonne General Medical Center where a splint was placed on his wrist. That same evening, Grant saw a dentist, Dr. David Melancon, who bonded two of Grant's teeth. The next day, Grant saw his family doctor, Dr. A. Delmar Walker, who placed his wrist in a cast. Grant also had several follow-up visits with Dr. Melancon for replacement bondings on his teeth. According to Dr. Melancon, Grant will definitely need crowns placed on his teeth when he reaches the age of eighteen or nineteen years old.
*918 The Coulons reported the accident to Wal-Mart on March 22, 1996. The manager receiving the notification, Richard Stanley, filled out an incident report. Wal-Mart sent Lucius Hebert to the Coulons' house in April 1996 to inspect the bicycle and the pedal. Hebert ultimately concluded that the pedal had been cross-threaded during the assembly process, which caused the pedal to fall off the bicycle. Based on the positioning of the brake and gear-shift assembly on the subject bicycle, Hebert did not believe that PBS assembled this particular bicycle. Moreover, according to Hebert, in December 1995, there was at least one Wal-Mart employee that sometimes assembled bicycles for sale at the Houma store. Thus, there was a dispute over whether this bicycle was assembled by PBS personnel or by Wal-Mart employees. The Coulons did not make any adjustments, modifications, or repairs to the bicycle between the time of purchase and the accident.
Lee and Susan Coulon, individually and on behalf of their minor child, Grant, filed suit against Wal-Mart on February 5, 1997. The petition also named Roadmaster Industries Inc., (Roadmaster) and Brunswick Corporation (Brunswick) as defendants, alleging that these two companies manufactured the bicycle. However, plaintiffs subsequently dismissed Roadmaster and Brunswick from the litigation with prejudice because these two companies did not assemble the bicycle and the defect was created in the assembly process. On December 4, 1997, Wal-Mart filed a motion and order to file a third party demand against Lucius J. Hebert d/b/a Pro Bicycle Service. The trial court allowed the filing of the third party demand "providing it does not upset the [February 5, 1998] trial date." PBS was not served with the third party demand until December 29, 1997. PBS filed a Motion to Deny Wal-Mart's Motion to File Third Party Demand and Motion to Continue Trial Date on January 16, 1998. After a contradictory hearing on February 4, the trial court dismissed the third party demand against PBS with prejudice.[2]
A bench trial was held on February 5, 1998. After the plaintiffs concluded the presentation of their case, Wal-Mart moved for an involuntary dismissal of the plaintiffs' case, which motion was denied. At the conclusion of the trial, the trial court ruled in favor of plaintiffs, finding Wal-Mart one hundred percent liable for the injuries sustained by Grant as a result of his fall from the bicycle when the pedal fell off the bicycle. The trial court awarded plaintiffs $19,406.65 for past and future physical and mental pain and suffering, and medical expenses. Wal-Mart appeals the judgment asserting seven assignments of error as follows:
1. The trial court erred in finding Wal-Mart a "professional vendor" for the purposes of tort liability pursuant to the Louisiana Products Liability Act.
2. The trial court erred in finding Wal-Mart liable for plaintiff's damages when plaintiff produced no evidence the store had notice of any defects to [sic] the bicycle and plaintiffs all admitted at trial that there were no apparent defects in the bicycle.
3. The trial court erred in not recognizing the independent contractor relationship existing between Mr. Lucius Hebert and Pro-Bicycle Sales [sic], and Wal-Mart at the time of the assembly of this bicycle.
4. The trial court erred in finding Wal-Mart negligent pursuant to the testimony and evidence presented at trial.
5. The trial court erred in its application of Res Ipsa Loquitur.

*919 6. Alternatively, the trial court erred in failing to quantify the percentage of fault attributable to Mr. Lucius Hebert/Pro-Bicycle Service, pursuant to Louisiana Civil Code article 2323 and Keith v. United States Fidelity & Guaranty Company, 96-2075 (La.5/9/97); 694 So.2d 180 and in finding Wal-Mart stores 100% liable for the actions and/or inactions of another party where all of the evidence presented at trial indicated that another party (Mr. Hebert) was responsible for the damages sustained by Grant Coulon.
7. The trial court erred in denying Wal-Mart's motion for involuntary dismissal.
These assignments of error can be grouped into four issues. Wal-Mart's first, second and fourth assignments of error deal with the issue of whether the trial court properly held Wal-Mart liable as a manufacturer under the Louisiana Products Liability Act. The second issue to be resolved pertains to Wal-Mart's fifth assignment of error and is whether the plaintiff demonstrated that there was a defect in the construction or composition of the bicycle sufficient to render Wal-Mart liable for Grant's accident and injuries. The third issue encompasses Wal-Mart's third and sixth assignments of error and can be phrased as whether the trial court was correct in failing to apportion any fault to Hebert and/or PBS. The fourth issue is the propriety of the trial court's denial of Wal-Mart's motion for involuntary dismissal.

WAL-MART'S MANUFACTURER STATUS
Wal-Mart contends that it does not meet the definition of a manufacturer under the Louisiana Products Liability Act (LPLA). Instead, Wal-Mart argues it should be held to the standard of a non-manufacturer seller because it hired PBS, an independent contractor, to assemble its bicycles.
LSA-R.S. 9:2800.53(1) defines manufacturer as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce. `Manufacturing a product' means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." According to Wal-Mart, it cannot be the manufacturer of the bicycle because first, PBS was an independent contractor that did the actual assembly of the bicycle and second, the definition of manufacturer does not include "assemble." We reject these arguments.
Although LSA-R.S. 9:2800.53 does not include the word "assembly" or "assemble" in the definition of "manufacturer" or "manufacturing a product," it does include the term "constructing." Construct is not defined in the LPLA; however, Black's Law Dictionary, sixth edition, defines construct as follows: "To build; erect; put together; make ready for use. To adjust and join materials, or parts of, so as to form a permanent whole. To put together constituent parts of something in their proper place and order." Accordingly, we conclude that the term "manufacturing a product" indirectly refers to assembling; thus, one who assembles a product for sale is properly deemed a manufacturer of the assembled product under the LPLA. Accordingly, this entity would be liable under the LPLA as a manufacturer for any defects that are created in the assembly process. See Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 752 (La.1987); Marshall v. Beno Truck Equipment, Inc., on reh'g, 481 So.2d 1022, 1031 (La.App. 1st Cir.1985), writs denied, 482 So.2d 620 (La. 1986); compare Nelton v. Astro-Lounger Manufacturing Company, Inc., 542 So.2d 128, 130-32 (La.App. 1st Cir.1989) (distributor that sold sofa bed which never left the carton in which it was packaged by the manufacturer was liable only as retailer, and not as manufacturer).
We also reject Wal-Mart's contention that it cannot be the manufacturer of *920 the subject bicycle because it was not the entity that assembled the bicycle for sale to its customers. Initially, we note that there is a dispute in the testimony regarding whether PBS assembled this bicycle. However, even if PBS assembled the bicycle, Wal-Mart meets the definition of manufacturer contained in the LPLA.
LSA-R.S. 9:2800.53(1)(a) and (b) define manufacturer to also include both "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product. [and] [a] seller of a product who exercises control over or influences a characteristic of the ... construction ... of the product that causes damage." Thus, construing these provisions together, a "manufacturer" is an entity which labels a product as its own or otherwise holds itself out as an entity in the business of constructing a product, as well as a seller who exercises control over or influences a characteristic of construction of a product which causes damage. Wal-Mart fits this definition of a manufacturer under the facts of this case.
Wal-Mart received the subject bicycle unassembled in a box sent by Roadmaster/Brunswick, the manufacturer of the bicycle parts. Wal-Mart either contracted with PBS to assemble or had a Wal-Mart employee assemble this bicycle. Wal-Mart placed the assembled bicycle on the bicycle sales rack inside the store, where it was purchased by Mrs. Coulon. Assuming PBS was the entity which actually assembled the bicycle, Wal-Mart admittedly did not give any notice to its customers, including Mrs. Coulon, that a separate entity assembled the bicycles for sale at the Houma Wal-Mart store. Therefore, we find that Wal-Mart held itself out as a manufacturer of the assembled bicycle, and the trial court properly treated Wal-Mart as a manufacturer under the LPLA.

PROOF OF A DEFECT IN CONSTRUCTION OR COMPOSITION
Pursuant to LSA-R.S. 9:2800.52, the LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the LPLA. Conduct or circumstances that result in liability under the LPLA are "fault" within the meaning of LSA-C.C. art. 2315. LSA-R.S. 9:2800.54 provides in pertinent part as follows:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
* * * * * *
C. The characteristic of the product that renders it unreasonably dangerous [in construction or composition] must exist at the time the product left the control of its manufacturer....
D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.
A product which is unreasonably dangerous in construction or composition is defined as a product which, at the time it left its manufacturer's control, deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. LSA-R.S. 9:2800.55.
The trial court concluded that the bicycle became unreasonably dangerous in construction or composition as a result of the assembly of that bicycle. We cannot say that this finding is manifestly erroneous. See Reed v. Wal-Mart Stores, Inc., 97-1174, pp.3-5 (La.3/4/98); 708 So.2d 362, 364-65. Hebert testified that his examination of the pedal on the day of trial revealed *921 that "someone tried to put it on and cross-threaded it." He further noted that a pedal which is properly assembled should not fall off a bicycle. On cross-examination, counsel for Wal-Mart inquired why Hebert made a comment in a prior taped statement that the pedal looked like it may have been hit with a hammer. Hebert explained that he knew something was wrong with the pedal when he inspected it at the Coulon's house in April 1996; however, Hebert was not sure if it was cross-threaded at the time. Looking at the pedal in court, Hebert believed it was cross-threaded, which caused it to fall off the bicycle. Additionally, Mr. Coulon testified that after the pedal fell off, he inspected it and noticed that the top three threads were galled. This testimony was sufficient to establish by a preponderance of the evidence that there was a defect in construction or composition. Certainly, if assembled properly, a pedal would not fall off while a person is riding a bicycle. Moreover, the Coulons each testified that no modifications, adjustments or repairs were made to the bicycle between the time of acquisition and the accident. Wal-Mart did not present any evidence to the contrary. Accordingly, the record contains a reasonable basis for the trial court's imposition of liability on Wal-Mart for the subject accident.[3]

APPORTIONMENT OF FAULT TO LUCIUS HEBERT
Wal-Mart contends that Hebert was a party that was also responsible for the subject accident and accordingly, the trial court erred in not quantifying the fault of Hebert. In connection with this contention, Wal-Mart asserts that the trial court erred in refusing to consider Hebert as an independent contractor. Wal-Mart relies on LSA-C.C. art. 2323, as revised in 1996,[4] which provides as follows:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury ... shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay....
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
Despite the language of article 2323, plaintiffs argue that the relevant comparison in a products liability case is between the defect and the plaintiff. Because Wal-Mart meets the definition of manufacturer in the LPLA by virtue of its assembly of the bicycle, plaintiffs argue that the trial court properly held Wal-Mart liable for all of the damages proximately caused by the pedal falling off the bicycle. Inherent in this argument is a notion that allowing a manufacturer such as Wal-Mart to have the fault of an entity such as PBS quantified could allow Wal-Mart to escape any liability, despite the express statement in LSA-R.S. 9:2800.54 that the manufacturer shall be liable for "all damages" proximately caused by a defect in a product.
We need not address whether the trial court was mandated to quantify the fault of Hebert because we find that the record supports the trial court's apportionment of one hundred percent liability to Wal-Mart. There was conflicting testimony in the record regarding PBS's role in the assembly of the bicycle. Particularly, Hebert testified that the bicycle he inspected did not reflect the workmanship of his employees. Hebert stated that the placement of the gear shifter and brake assembly on the subject bicycle was different *922 from the placement of this equipment on bicycles assembled by PBS. Additionally, Hebert testified that in December 1995, PBS did not assemble all of the bicycles sold by Wal-Mart because other Wal-Mart employees assembled some of the bicycles. Hebert verbally identified a man named "Mason" as a Wal-Mart employee who also assembled bicycles. To the contrary, Legg testified that PBS was the exclusive assembler and repairer of bicycles sold at Wal-Mart. Thus, there were two permissible views of the evidence regarding whether someone other than a PBS employee assembled this bicycle. The trial court could have concluded that a Wal-Mart employee assembled the subject bicycle, rather than someone affiliated with PBS. A factfinder's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). Accordingly, we find no merit in this argument.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Wal-Mart.
AFFIRMED.
NOTES
[1] Hon. Edward A. de la Houssaye, III, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The judgment dismissing Wal-Mart's third party demand against PBS is not before us on this appeal.
[3] Because we find that the trial court was not clearly wrong in finding Wal-Mart at fault for the subject accident, we need not address Wal-Mart's assignment of error regarding the denial of its motion for involuntary dismissal.
[4] We note that the Louisiana Supreme Court has found this amendment to be procedural and therefore, retroactive. See Keith v. United States Fidelity & Guaranty Company, 96-2075, p.2 (La.5/9/97); 694 So.2d 180, 181.